No. 22-1272

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

THOMAS A. FOX, and all those similarly situated,

Plaintiff-Appellee,

v.

ALCONA COUNTY, MICHIGAN, by its Board of Commissioners; CHERYL
FRANKS, in her official and individual capacities; WASHTENAW COUNTY,
MI; CATHERINE McCLARY; OGEMAW COUNTY, MI, by its Board of
Commissioners; DWIGHT McINTYRE, in his official and individual capacities;
CRAWFORD COUNTY, MI; KATE M. WAGNER; JOSEPH V. WAKELEY;
MACOMB COUNTY, MI; LAWRENCE ROCCA; PRESQUE ISLE COUNTY,
MI; and BRIDGET LALONDE,

Defendants-Appellants,

and

SAGINAW COUNTY, MI, et al.

Defendants.

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 1:19-cv-11887
The Honorable Thomas L. Ludington, District Judge

---

**APPELLANTS ALCONA COUNTY, WASHTENAW COUNTY,
CRAWFORD COUNTY, MACOMB COUNTY, OGEMAW COUNTY, and
PRESQUE ISLE COUNTY'S BRIEF ON APPEAL**

Matthew T. Nelson
Ashley G. Chrysler
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503-2832
(616) 752-2000
mnelson@wnj.com
achrysler@wnj.com

*Attorneys for Alcona County*

Charles A. Lawler
Clark Hill
212 E. Cesar E. Chavez Avenue
Lansing, MI 48906
(517) 318-3100
clawler@clarkhill.com

*Attorneys for Crawford and Presque Isle Counties*

Frank Krycia
Aaron C. Thomas
Macomb County Corporation Counsel
1 S. Main Street – 8th Floor
Mt. Clemens, MI 48043
(586) 469-6346
frank.krycia@macombgov.org
aaron.thomas@macombgov.org

*Attorneys for Macomb County*

Theodore W. Seitz
Kyle M. Asher
Dykema Gossett PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933-1529
(517) 374-9100
tseitz@dykema.com
kasher@dykema.com

*Attorneys for Washtenaw County*

Gregory M. Meihn
Matthew Wise
GORDON REES SCULLY MANUKHANI
37000 Woodward Avenue, Suite 225
Bloomfield Hills, Michigan 48304
gmeihn@grsm.com
mwise@grsm.com

*Attorneys for Ogemaw County*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................v

STATEMENT REQUESTING ORAL ARGUMENT ...............................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF ISSUES FOR REVIEW .............................................4

INTRODUCTION ...................................................................................5

STATEMENT OF THE CASE..............................................................6

    Michigan's General Property Tax Act ..........................................6

    Fox sues 26 counties against whom he has no personal claims .....................9

    The district court stays the case ....................................................10

    The County Defendants seek permission to appeal.......................14

    The district court rejects the County Defendants' standing and
    sovereign-immunity defenses ........................................................14

    This Court declines to address the juridical-link question in the
    sovereign-immunity appeal but grants the Rule 23(f) petitions ....................15

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT .......................................................................................20

    I.    The district court erred by relying on the juridical-link doctrine
    to establish standing instead of dismissing Fox's claims against
    Counties that did not cause him any alleged injury ...........................20

        A.    The district court recognized that Fox did not suffer any
        injury traceable to the non-Gratiot County Defendants............21

B.      The district court erred by relying on the juridical-link
        doctrine to create standing and certify the class ......................22

C.      The juridical-link doctrine does not vary the requirements
        or analysis of Article III standing ..............................................26

II.     The district court failed to apply correctly Rule 23's criteria and
        could not do so on the exceedingly limited record before the
        court ...........................................................................................................32

A.      The district court failed in its duty to conduct a "rigorous
        analysis" into whether the Rule 23 criteria were met ..............32

B.      The district court incorrectly concluded that the record
        here demonstrates that class certification is allowable ............36

        1.      The district court had no evidence before it to
                determine that Fox is an adequate class
                representative .................................................................36

        2.      The district court failed to conduct a rigorous
                analysis of whether the proposed class action was
                superior to county-by-county class actions in state
                court ...............................................................................40

        3.      The district court failed to engage in a rigorous
                analysis of the predominance factor ..............................45

CONCLUSION AND REQUESTED RELIEF ......................................................46

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................27

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) ........................................................31

*Bahamas Surgery Center, LLC v. Kimberly-Clark Corp.*,
  820 F. App'x 563 (9th Cir. 2020)............................................ 17, 24, 30

*Blackburn v. Dare County*,
  486 F. Supp. 3d 988 (E.D.N.C. 2020)...........................................25

*Bond v. Antero Restaurant Group*,
  438 F.R. D. 187 (S.D. Ohio 2018) ................................................37

*Bowles v. Sabree*,
  No. 20-12838, 2022 WL 141666 (E.D. Mich. Jan. 14, 2022)............38

*Cash v. Swifton Land Corp.*,
  434 F.2d 569 (6th Cir. 1970) ........................................................33

*Cole v. City of Memphis*,
  839 F.3d 530 (6th Cir. 2016)........................................................19

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 91 (2006) ......................................................................27

*Davidson v. Worldwide Asset Purchasing, LLC*,
  914 F. Supp. 2d 918 (N.D. Ill. 2012)..............................................31

*Easter v. America West Financial*,
  381 F.3d 948 (9th Cir. 2004).......................................................29

*Fallick v. Nationwide Mutual Insurance Co.*,
  162 F.3d 410 (6th Cir. 1998)................................................... 18, 21

Page(s)

*Fialka-Feldman v. Oakland University Board of Trustees*,
  639 F.3d 711 (6th Cir. 2011) ......................................................... 20, 29

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) .................................................................28

*Fox v. Saginaw County*,
  No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022) ....................................16

*Frank v. Gaos*,
  139 S. Ct. 1041 (2019) ........................................................................31

*Freed v. Thomas*,
  No. 17-CV-13519, 2021 WL 942077 (E.D. Mich. Feb. 26, 2021) .............. 38, 43

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) .............................................................. 18, 33, 34

*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) .................................................................40

*In re American Medical Systems, Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ........................................... 32, 34, 35, 36

*In re DuPuy Orthopaedics, Inc. ASR Hip Implants Products Liability Litigation*,
  953 F.3d 890 (6th Cir. 2020) .................................................................20

*In re Whirlpool Corp. Front-Loading Washer Product Liability Litigation*,
  722 F.3d 838 (6th Cir. 2013) .................................................................33

*In re Zantac (Ranitidone) Products Liability Litigation*,
  2020 WL 786674 (S.D. Fla. Dec. 31, 2020) .........................................25

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) .................................................................40

*Kombal v. Allstate Insurance Co.*,
  2020 WL 5816498 (D. Mont. Sept. 30, 2020) .....................................25

Page(s)

*La Mar v. H & B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973) ............................................................. 12, 23, 24, 30

*Lewis v. Casey*,
  518 U.S. 343 (1996) ............................................................................ 20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................ 22

*Mahon v. Ticor Title Insurance Co.*,
  683 F.3d 9 (2d Cir. 2012) ................................................................. 17, 26, 27, 28

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ............................................................. 40

*McCulloch v. Maryland*,
  17 U.S. 316 (1819) .............................................................................. 44

*Murray v. U.S. Department of Treasury*,
  681 F.3d 744 (6th Cir. 2012) ............................................................. 19

*National Licorice Co. v. NLRB*,
  309 U.S. 350 (1940) ............................................................................ 45

*Olden v. LaFarge Corp.*,
  383 F.3d 495 (6th Cir. 2004) ............................................................. 3, 16, 20

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................ 27

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ............................................................. 27, 30

*Perry v. Allstate Indemnity Co.*,
  953 F.3d 417 (6th Cir. 2020) ............................................................. 24, 25

*Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*,
  654 F.3d 618 (6th Cir. 2011) ............................................................. 33

Page(s)

*Proctor v. Saginaw County Board of Commissioners*,
   --- N.W.2d ----, 2022 WL 67248 (Mich. Ct. App. 2022)........................ 9, 25, 38

*Rafaeli, LLC v. Oakland County*,
   952 N.W.2d 434 (Mich. 2020) .................................................... passim

*Rolaff v. Farmers Insurance Co.*,
   2020 WL 4939172 (D. Okla. Mar. 19, 2020).....................................25

*Rutherford v. City of Cleveland*,
   137 F.3d 905 (6th Cir. 1998).................................................37

*Senne v. Kansas City Royals Baseball Corp.*,
   2021 WL 3129460 (N.D. Cal. July 23, 2021) ....................................25

*Senter v. General Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976)..................................................37

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010) .........................................................43

*Shelton v. Pargo, Inc.*,
   582 F.2d 1298 (4th Cir. 1978).................................................34

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................... 18, 22, 29, 31

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ............................................... 20, 24, 29

*Thole v. U.S. Bank, N.A.*,
   140 S. Ct 1615 (2020) .......................................................17

*Thompson v. Board of Education of Romeo Community Schools*,
   709 F.2d 1200 (6th Cir. 1983)................................................24

*United States v. Van*,
   931 F.2d 384 (6th Cir. 1991).................................................20

Page(s)

*Universal Life Church Monastery Storehouse v. Nabors*,
 --- F.4th ----, 2022 WL 1699304 (6th Cir. 2022) .................................... 16, 20, 27

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................ 18, 32, 33

*Weathers v. Peters Realty Corp.*,
 499 F.2d 1197 (6th Cir. 1974)......................................................................... 33, 34

*Wong v. Wells Fargo Bank N.A.*,
 789 F.3d 889 (8th Cir. 2015)......................................................................... 17, 29

*Zehentbrauer Family Land LP v. Chesapeake Exploration, L.L.C.*,
 935 F.3d 496 (6th Cir. 2019) ................................................................................32

## Statutes

28 U.S.C. § 1331 ...........................................................................................2

28 U.S.C. § 1343 ...........................................................................................2

28 U.S.C. § 1367 ...........................................................................................2

28 U.S.C. § 2201 ...........................................................................................2

Michigan Compiled Laws § 211.44...........................................................7

Michigan Compiled Laws § 211.45...........................................................7

Michigan Compiled Laws § 211.78...........................................................7

Michigan Compiled Laws § 211.78a..........................................................7

Michigan Compiled Laws § 211.78g..........................................................7

Michigan Compiled Laws § 211.78t.......................................................8, 39

Page(s)

## Rules

Federal Rule of Civil Procedure 23 ................................................................ passim

Sixth Circuit Rule 34..................................................................................1

## STATEMENT REQUESTING ORAL ARGUMENT

Defendants-Appellants respectfully request oral argument under Sixth Circuit Rule 34(a). This case is one of dozens of similar cases in federal and state court challenging Michigan's tax-foreclosure system and raises important questions regarding the suitability of resolving such claims as class actions. Indeed, one of the issues here—whether the juridical-link doctrine can be used in a class action to circumvent the Article III standing requirement—is a novel issue that this Court has never definitively resolved. In fact, in granting Defendants-Appellants' petitions to appeal, this Court acknowledged that "the issue is novel in this circuit and of relevance 'not only in the litigation before the court, but also to class litigation in general.' " (3/30/2022 Order, ECF No. 16-2 (citation omitted).) Accordingly, Defendants-Appellants respectfully submit that oral argument will help this Court resolve these important questions.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee Thomas Fox filed this action in the district court under 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil-rights cases; 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; and 28 U.S.C. § 1367, which authorizes federal courts to decide supplemental state-law claims. (Am. Compl. ¶10, R.17, PageID.220.) Fox asserted that Gratiot County foreclosed on a property he owned because he failed to pay the property taxes. (*Id.* ¶¶18, 21, PageID.222.) Gratiot County sold the property for more than the unpaid taxes, but Fox complains that he did not receive any of the surplus funds from Gratiot County. (*Id.* ¶25, PageID.223.) Fox does not claim that any of the other counties injured him in any way. (*See id.* ¶¶25-31, PageID.223-24.) Instead, his counsel added the other counties because they wanted to be class counsel for a multi-county class action. For the reasons set forth more fully in the first argument below, the federal courts lack subject-matter jurisdiction over any claims in this case against the Non-Gratiot County Defendants.

On October 16, 2020, without oral argument or allowing discovery, the district court issued an order certifying the class and appointing class counsel. (Order Lifting Stay, R.124, PageID.2294.) Even though threshold challenges to the court's jurisdiction were pending, the court implicitly denied the County

Defendants' standing arguments via the juridical-link doctrine, finding that all Defendants are "so juridically linked to one another that Plaintiff has standing against each of them to the same extent that he has standing against the Gratiot County Defendants." (*Id.*)

The County Defendants filed timely petitions to appeal under Rule 23(f) on October 29, 2020 and October 30, 2020, respectively. (*In re Alpena Cnty.*, Case No. 20-110, Pet. for Permission to Appeal, ECF No. 1-1; *In re Alcona Cnty.*, Case No. 20-111, Pet. for Permission to Appeal, ECF No. 1-2.) This Court granted the County Defendants' Rule 23(f) petitions. (3/30/2022 Order, ECF No. 16-2.) Accordingly, this Court has jurisdiction under Federal Rule of Civil Procedure 23(f), which provides that "[a] Court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification." Additionally, as this Court recognized in its Order granting the petitions to appeal, "[t]he question of subject matter jurisdiction is a prerequisite to class certification and is therefore properly raised in this Rule 23(f) appeal." (*Id.* (*quoting Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004)).)

## STATEMENT OF ISSUES FOR REVIEW

1.    Whether the district court erred by applying the so-called "juridical link" doctrine to circumvent Article III standing and certify the class, thereby allowing Plaintiff-Appellee Thomas Fox to sue numerous defendants that caused him no injury.


2.    Whether the district court undertook a "rigorous analysis" to determine whether Fox had met the requirements of Rule 23 when it certified the class without the benefit of discovery, a hearing, or even affording various Defendants an opportunity to respond to the class-certification motion or the complaint.


3.    Whether the district court abused its discretion when it determined that Fox had demonstrated all of the requirements of Rule 23.

## INTRODUCTION

Plaintiff-Appellee Thomas Fox filed this class action against Gratiot County and its treasurer, alleging that they took or destroyed his equity in the property by retaining the surplus proceeds on the property after they foreclosed on the property and used the sale proceeds to pay the outstanding property taxes, in accordance with the General Property Tax Act ("GPTA"). Fox also sued 54 other Michigan counties and county treasurers, even though none of them had sold at auction any Fox-owned property or injured him in any way.

Even though the non-Gratiot County Defendants did nothing to injure Fox, the district court concluded that he could still sue them as the class representative for others whom the non-Gratiot County Defendants purportedly injured. To achieve this novel result, the district court relied on the juridical-link doctrine to create standing for Fox and certified the class. The district court acknowledged that this Court had never applied the juridical-link doctrine to provide standing, but decided to do so anyway even after reciting the bedrock principle that standing requires that a plaintiff have suffered an injury attributable to each defendant. In so doing, the district court ran afoul Article III's case-or-controversy requirement. Indeed, it is well settled that a class representative cannot acquire standing against defendants that caused him no harm merely by virtue of bringing a class action. The novelty of Fox's approach led this Court to grant Defendants' Rule 23(f)

petitions, and its unconstitutionality requires that the non-Gratiot County Defendants be dismissed from the case.

The district court also certified the class without the benefit of any discovery, before nine Defendants responded to class certification because the case was stayed, and effectively on the day that two Defendants had been served because they were served after the case was stayed. Due process, Federal Rule of Civil Procedure 23, and prudence counsel to the contrary. Courts are required to apply a rigorous analysis to determine whether the party seeking class certification has proven all the requirements for Rule 23. Such rigor is nigh impossible without the benefit of discovery and allowing all parties to challenge the proofs. For these additional reasons, the district court abused its discretion in certifying the class as to any Defendant.

## STATEMENT OF THE CASE

### Michigan's General Property Tax Act

Because this appeal arises in the context of challenges to Michigan's statutory process for recouping unpaid property taxes, an overview of that process is helpful.

In Michigan, property taxes are nonrecourse, meaning that taxing units of local government cannot sue property owners to collect unpaid taxes. In 1999, the Michigan Legislature revised the GPTA to "expedite[] the foreclosure process,

thereby reducing the amount of abandoned, tax-delinquent properties within the state." *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 443 n.10 (Mich. 2020). As revised, the GPTA allowed for "the recovery of unpaid real-property taxes, penalties, interest, and fees through the foreclosure and sale of the property on which there is a tax delinquency." *Id.* at 441-42. Pursuant to this process, "tax-delinquent properties are forfeited and [title] transferred to the county treasurers; foreclosed on after a judicial foreclosure hearing; and, if not timely redeemed, sold at a public auction." *Id.*; *see* Mich. Comp. Laws § 211.44; Mich. Comp. Laws § 211.45.[1] The GPTA provides property owners repeated notices and opportunities to pay the back taxes and avoid forfeiture and foreclosure. *See* Mich. Comp. Laws §§ 211.78a(2), 211.78g(1)-(2). If, despite the various notices, the property owner fails to pay the delinquent taxes, the county treasurers, as the foreclosing governmental units, have the statutory responsibility for selling the properties. Mich. Comp. Laws § 211.78(8)(a)(i).

After foreclosure, the GPTA allows a foreclosing governmental unit to sell the foreclosed property at auction. Mich. Comp. Laws § 211.78m(7). Auction "sale proceeds are often insufficient to cover the full amount of the delinquent taxes,

---

[1] All references to the GPTA in the Michigan Compiled Laws refer to the version that existed at the time of the *Rafaeli* decision in July 2020. The GPTA was revised in December 2020, to address the *Rafaeli* decision.

interest, penalties, and fees related to the foreclosure and sale of the property." *Rafaeli*, 952 N.W.2d at 447. However, where there are "excess proceeds . . . those proceeds are used to subsidize the costs for all foreclosure proceedings and sales for the year of the tax delinquency, as well as any years prior or subsequent to the delinquency." *Id.* Under the GPTA until late 2020, former property owners were not entitled to "any disbursement of the surplus proceeds" nor was there any mechanism to pay those proceeds to the former property owner. *Id.*

In July 2020, the Michigan Supreme Court ruled that the GPTA violates the Michigan Constitution's taking provision because it does not allow for the return of any portion of the proceeds from the sale of tax-foreclosed properties that exceeds the unpaid taxes and fees. *See generally Rafaeli*, 952 N.W.2d 434. The court referred to the difference between a tax-foreclosed property's sale price and the unpaid property taxes, fees, etc., as "surplus proceeds." *Id.* at 482-84.[2]

---

[2] In the wake of *Rafaeli*, the Michigan Legislature amended the GPTA to establish a procedure for the owners of interests in a tax-foreclosed property to recover the surplus proceeds. *See* Public Act 256, *largely codified at* Mich. Comp. Laws § 211.78t. The amendment, which was effective in December 2020, provides that the statutory procedure is the sole and exclusive remedy for a person claiming the surplus proceeds. *Id.* § 211.78t(11).

**Fox sues 26 counties against whom he has no personal claims**

Fox failed to pay his property taxes on real estate in Gratiot County, Michigan. (Am. Compl. ¶18, R.17, PageID.222.) After Fox ignored numerous notices and opportunities to pay his overdue taxes, Gratiot County foreclosed on the property. (*Id.* ¶19, PageID.222*.*) After Fox declined to redeem the property, Gratiot County then sold the property in a tax-foreclosure auction for more than the sum of the unpaid property taxes, late fees, and associated costs. Consistent with the GPTA, Gratiot County paid the property taxes to the local taxing units and retained the surplus proceeds. (*See id*. ¶¶16-22, PageID.222.)

In June 2019, Fox filed a five-count class-action complaint against Gratiot County and its treasurer, alleging that they had unlawfully retained the surplus "equity"[3] in his foreclosed property. (Compl., R.1, PageID.1.) The complaint sought damages against Gratiot County and its treasurer for a taking under the Fifth and Fourteenth Amendments of the U.S. Constitution under § 1983 (Count I), a direct taking under Fifth and Fourteenth Amendments (Count II), inverse

---

[3] Fox says that he is entitled not just to recoup the surplus proceeds, but also the difference between the unpaid property taxes and the foreclosed property's fair-market value. (First Am. Compl. ¶¶ 22-23, 92, R.17, PageID.222-23, 236.) After this case was filed, the fair-market-value claim was rejected in *Rafaeli* as a matter of law. 952 N.W.2d at 465-66; *see also Proctor v. Saginaw Cnty. Bd. of Comm'rs*, --- N.W.2d ----, 2022 WL 67248, at *10 (Mich. Ct. App. 2022).

condemnation under Michigan law (Count III), violation of Article X, Section II of the Michigan Constitution (Count IV), and an excessive fine under the Eighth Amendment of the U.S. Constitution (Count V). (*Id.*, PageID.11-19.) Fox also asserted claims against 13 other Michigan counties and their treasurers even though Fox personally had no claims against them. (*Id.* ¶¶ 2-3, 20-21, PageID.3, 7.) Fox alleged that the other defendant counties and their treasurers committed the same infractions at unidentified times against unidentified individuals, and asserted class claims on behalf of those individuals. (*Id.*)

A few months later, Fox filed an Amended Complaint adding three additional counts: violation of procedural due process (Count VI), substantive due process (Count VII), and unjust enrichment (Count VIII). (Am. Compl. 19-24, R.17, PageID.237-39.) The Amended Complaint also added 13 more counties and 14 more treasurers as defendants. (*Id.* 1-3, PageID.216-18.) Fox did not assert that any of these new defendants caused him any harm.

**The district court stays the case**

In January 2020, the district court stayed the case pending this Court's decision in *Freed v. Thomas*, No. 18-2312, which was considering the issue of whether the Tax Injunction Act deprived the federal courts of jurisdiction to resolve cases like this one. (Stay Order, R.85, PageID.1146.) After the court stayed

the case, Fox finally served the Alcona County Defendants with the summons and Amended Complaint. (Cert. of Serv., R.86, PageID.1159.)

While the case was stayed, the Michigan Supreme Court decided *Rafaeli*, 952 N.W.2d at 461.

On September 14, 2020, Fox filed an emergency motion to lift the court's stay in light of *Rafaeli*, explaining his fear that "other opportunistic plaintiffs' lawyers" would create "a deluge of new cases." (Emergency Mot. to Lift Stay, R.92, PageID.1172.) Along with the lift-stay motion, Fox moved for class certification and expedited consideration of class certification. (Mot. for Class Certification, R.93, PageID.1278; Mot. for Expedited Consideration, R.94, PageID.1477-80.) In short, Fox and his counsel wanted the district court to preclude any person who had actually had property foreclosed and sold by the non-Gratiot County Defendants from being able to sue those counties just because Fox and his counsel wanted to control a multi-county class action.

## The district court lifts the stay, and instantaneously certifies a class

On October 16, 2020, the court lifted the stay. (Order Lifting Stay, R.124, PageID.2284.) Instead of setting a briefing schedule on the motion for class certification after the stay was lifted, the court granted class certification and appointed class counsel, all without oral argument. (*Id.* at PageID.2285.) No discovery was allowed on class certification, Fox was not deposed on his

11

willingness or ability to serve as the class representative, and Fox failed to even file a declaration that he was willing and qualified to serve as the class representative. Eight defendants had not had the opportunity to respond to the class-certification motion because the case was stayed and the court provided no indication that it would rule on the certification motion before lifting the stay. Additionally, the class was certified before four counties' responsive pleadings were even due. For the Alcona Defendants, the court certified the class on the very day that the case commenced because Fox neglected to serve the Alcona Defendants until after the case was stayed.

When the court certified the class, the initial defendants had moved to dismiss the case on various grounds including the lack of standing. (*See e.g.*, Washtenaw Cnty.'s Mot. to Dismiss, R.120, PageID.2081; Crawford & Presque Isle Cntys.' Mot. to Dismiss, R.122, PageID.2178.) The court's partially *ex parte* class-certification order implicitly denied Defendants' standing arguments via the novel juridical-link doctrine first identified in the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 464 (9th Cir. 1973). (Order Lifting Stay, R.124, PageID.2291-92.) Specifically, the court reasoned that the *La Mar* court had "recognized two exceptions to the ordinary standing rule," one of which applied in "[i]nstances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." (*Id.*

at PageID.2291.) The court went on to note that while this Court "has yet to apply the juridical link doctrine," it also has not rejected the doctrine outright when it had the opportunity to do so. (*Id.* at PageID.2292.) The court ultimately held that the County Defendants had "become so juridically linked to one another that Plaintiff has standing against each of them to the same extent that he has standing against the Gratiot County Defendants." (*Id.*)

The court also rejected the Defendants' arguments that certification would be premature given Defendants' lack of pre-certification discovery. (*Id.* at PageID.2294.) The court also stated, without further explanation, that the record here was adequate because it "includes documentary evidence." (*Id.*) But that "documentary evidence" was just Plaintiff's counsel's professional biographies (Mot. for Class Certification, R.93-5, PageID.1455-68); a declaration from counsel (R.93-6, PageID.1469-75); a class-certification order from another case (R.93-2, PageID.1386-1400); the hearing transcript from that case (R.93-4, PageID.1430-54); and a document created by Plaintiff's counsel purporting to show the aggregate value of the surplus proceeds of tax auctions (R.93-3, PageID.1401-29).

The district court adopted Fox's proposed class description. (Order Lifting Stay, R.124, PageID.2291.) The district court did not define the class's temporal limits, referring only to the "relevant period." (*Id.*) Fox and his counsel represent each of the following: (1) those whose property was sold at auction for more than

the delinquent taxes and fees; (2) those whose property was sold at auction for less than the delinquent taxes and fees; and (3) those whose property was never sold at auction. The district court did not address whether these groups could be adequately represented by a person in the first group.

## The County Defendants seek permission to appeal

The County Defendants sought permission to appeal the court's certification decision pursuant to Rule 23(f). (*In re Alpena Cnty.*, Case No. 20-110, Pet. for Permission to Appeal, ECF No. 1-1; *In re Alcona Cnty.*, Case No. 20-111, Pet. for Permission to Appeal, ECF No. 1-2.) The County Defendants claimed that interlocutory appeal was warranted based on the novel question of whether the juridical-link doctrine creates standing because that issue has significant consequences for both the matter at hand and class-action litigation in this Circuit. The County Defendants also argued that the district court misapplied Rule 23 by certifying the class without undertaking "rigorous analysis" to determine that the requirements of class certification have been met.

## The district court rejects the County Defendants' standing and sovereign-immunity defenses

Three months after lifting the stay and concurrently granting class certification, the court ruled on the motions to dismiss, granting them in part and denying them in part. (Order Re Mots. to Dismiss, R.148, PageID.3307.) The court

dismissed the county treasurers on qualified-immunity grounds,[4] and also

dismissed Count II (direct takings claims under the Fifth and Fourteenth

Amendments), Count IV (violation of Article X, Section II of the Michigan

Constitution), Count V (excessive fine under the Eighth Amendment of the U.S.

Constitution), and Count VII (substantive due process). (*Id.*) The court allowed

Count I (takings claim under § 1983), Count III (inverse condemnation), Count VI

(procedural due process), and Count VIII (unjust enrichment) to proceed against all

of the County Defendants. (*Id.*, PageID.3335.) After recognizing that the Plaintiff

"was injured only by the Gratiot County Defendants," the court nonetheless

reaffirmed its previous determination that all the County Defendants were

juridically linked for standing purposes. (*Id.*, PageID.3312.)

**This Court declines to address the juridical-link question in the sovereign-immunity appeal but grants the Rule 23(f) petitions**

The County Defendants appealed the denial of sovereign immunity under

the collateral-order doctrine, and argued that this Court was also required to

consider the issue of Article III standing, because that issue went to the Court's

subject-matter jurisdiction. The district court stayed the proceedings pending that

appeal. (3/9/2021 Order, R.166, PageID.3988.) A panel of this Court referred the

---

[4] Because the treasurers have been dismissed, this appeal is being pursued in the names of the Counties.

Counties' Rule 23(f) petitions to the panel that would hear the sovereign-immunity appeal because the juridical link "issue [was] at the heart of" that appeal. (*In re Alcona Cnty.*, No. 20-111, 7/13/2021 Order, ECF No. 14-2.)

In February 2022, the Court affirmed the denial of sovereign immunity. *Fox v. Saginaw Cnty.*, No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022). The Court ruled that it lacked jurisdiction under the collateral-order doctrine to consider defendants' arguments concerning the juridical-link doctrine.[5] *Id.* at *10-11. And so, the issue remained unresolved.

A month later, the same panel granted the Defendants' Rule 23(f) petitions. (3/30/2022 Order, ECF No. 16-2.) Although the Court did not opine on the merits of the appeal, it explained that this Court has "described the juridical link as a sparingly applied class-certification doctrine" and that the Court has "never held that the doctrine applied" to confer Article III standing. (*Id.* at 6 (cleaned up).) The Court explained that "the question of subject matter jurisdiction is a prerequisite to class certification and is therefore properly raised in a Rule 23(f) appeal." (*Id.* (cleaned up).) Accordingly, the Court granted the petitions. (*Id.* at 7-8.)

---

[5] That holding has been implicitly called into doubt by a more recent published decision. *See Universal Life Church Monastery Storehouse v. Nabors*, --- F.4th ---, 2022 WL 1699304, at *5, 14-15 (6th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The U.S. Supreme Court has warned that "courts sometimes make standing law more complicated than it needs to be." *Thole v. U.S. Bank, N.A.*, 140 S. Ct 1615, 1622 (2020). That is exactly what happened here.

At the outset of every case, plaintiffs must establish that they have standing to assert their claims against each defendant. Where a plaintiff lacks standing, courts are constitutionally barred from entertaining the plaintiff's claims. Here, despite acknowledging that under a traditional standing analysis, the district court concluded that Fox had standing to sue all of the named counties because of the juridical-link doctrine. That doctrine arises from the Ninth Circuit decision addressing class action issues of adequacy and typicality, but which some courts have erroneously used to create standing. As other circuits, *including the Ninth*, have recognized, the juridical-link doctrine is inapplicable to determining Article III standing, and cannot be used to circumvent constitutional standing requirements. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 9, 62 (2d Cir. 2012); *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 896 (8th Cir. 2015); *Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*, 820 F. App'x 563, 566 n.4 (9th Cir. 2020). And this Court and the Supreme Court's precedent is also contrary to the district court's ruling—a potential class representative cannot acquire standing against each defendant merely by virtue of bringing a class action. *Spokeo, Inc. v. Robins*,

578 U.S. 330, 337-38 (2016); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Because Fox lacks standing against the non-Gratiot County Defendants, the district court erred in certifying the class. Instead, the claims against the non-Gratiot County Defendants should have been dismissed because the district court lacks subject-matter jurisdiction over those claims.

In certifying the class, the district court also failed to undertake the requisite "rigorous analysis" to determine whether Fox had met his burden of establishing the requirements of Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Contrary to precedent from this Court and the U.S. Supreme Court, the district court certified the class without conducting any discovery, allowing any cross-examination of potential class members, or even allowing each defendant to respond to the motion for class certification. The district court made no effort to "probe behind the pleadings" and instead relied only on the assertions in Fox's complaint and class-certification motion. *Contra Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Because the district court certified the class the very moment it lifted the stay, the district court made its certification decision without the benefit of responsive pleadings or responses to the class-certification motion from several of the Defendants. The district court's analysis cannot be considered "rigorous" when it failed to provide all parties with a meaningful opportunity to present evidence and arguments on the maintainability of the class action.

18

The district court's failure to conduct a rigorous analysis resulted in several, more specific errors. First, the court concluded that Fox is an adequate representative for the class despite the absence of any evidence that he is sufficiently knowledgeable to assist Class Counsel or that he does not have conflicts with other class members. Second, the district court failed to consider whether these claims are better handled by the state courts where the underlying claims raise developing issues of state law that Class Counsel, by their conduct, implicitly concede can only be definitely resolved in state court. Third, the district court failed to give adequately address whether common issues of law predominate where numerous class members' claims are affected by liens held by non-parties. For all these reasons, the district court's decision to certify a class was an abuse of discretion.

## STANDARD OF REVIEW

This Court reviews de novo a district court's decision regarding a plaintiff's Article III standing. *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). The Court reviews class-certification decisions for an abuse of discretion. *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id.* (cleaned up).

**ARGUMENT**

**I.    The district court erred by relying on the juridical-link doctrine to establish standing instead of dismissing Fox's claims against Counties that did not cause him any alleged injury.**

At every stage of a case, the federal courts have the duty to ensure that there is subject-matter jurisdiction over the dispute. *United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991). The requirement that jurisdiction be established as a threshold matter "springs from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). For that reason, "subject matter jurisdiction is a prerequisite to class certification." *Olden*, 383 F.3d at 498.

Federal courts are courts of limited jurisdiction under the Constitution, and the requirement of Article III standing is "a cradle-to-grave requirement that must be met to file a claim in federal court and that must be met to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Tr.*, 639 F.3d 711, 713 (6th Cir. 2011); *see In re DuPuy Orthopaedics, Inc. ASR Hip Implants Prods. Liab. Litig.*, 953 F.3d 890, 893 (6th Cir. 2020). "Standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 385 n.6 (1996). Instead, plaintiffs must demonstrate standing as to each defendant. *See Universal Life*, 2022 WL 1699304, at *5.

When a plaintiff has not suffered an injury that is fairly traceable to a defendant, the constitutional minimum for Article III standing as to that Defendant

has not been met, and the federal courts lack subject-matter jurisdiction to adjudicate claims as to that Defendant. Here, the district court erred by concluding that the juridical-link doctrine eliminated the constitutional requirement of an injury traceable to each defendant. The district court instead applied the juridical-link doctrine to allow Fox to assert claims against counties and treasurers even though he has only alleged injury from the Gratiot County Defendants. Because Fox does not have standing to assert claims against the non-Gratiot County Defendants, he cannot represent a class against those other defendants. For that reason, the court's class-certification ruling was improper.

## A.    The district court recognized that Fox did not suffer any injury traceable to the non-Gratiot County Defendants.

"Threshold individual standing is a prerequisite for all actions, including class actions. A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick*, 162 F.3d at 423 (cleaned up). The "irreducible constitutional minimum" of standing requires that a plaintiff individually: (1) suffered an injury in fact that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) alleged an injury that is fairly traceable to, or caused by, challenged conduct by the defendants; and (3)

demonstrated that the injury is likely to be redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

The fact that Fox asserted a putative class action does not affect standing. Rather, he "must allege and show that he *personally*" suffered an injury by *all* the County Defendants—he cannot rely upon an "injury suffered by other, unidentified members of the class." *Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 (2016), *as revised* (May 24, 2016) (cleaned up, emphasis added).

After certifying the class, the district court correctly recognized that "Plaintiff was injured only by the Gratiot County Defendants" and that this would "[n]ormally . . . require dismissal of the non-Gratiot County Defendants." (Order Re Mots. to Dismiss, R.148, PageID.3312.) The district court should have followed the admittedly "normal" course.

## B.    The district court erred by relying on the juridical-link doctrine to create standing and certify the class.

The district court implicitly (and later explicitly) denied Defendants' standing arguments via the novel juridical-link doctrine, finding that all Defendants are "so juridically linked to one another that Plaintiff has standing against each of them to the same extent that he has standing against the Gratiot County Defendants." (Order Lifting Stay, R.124, PageID.2294.) But the juridical-link doctrine addresses the adequacy of a class representative and the typicality of the claims, not standing.

The doctrine does not create standing where a party lacks an injury fairly traceable to each defendant.

The juridical-link doctrine has its genesis in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 464 (9th Cir. 1973). There, the Ninth Circuit analyzed whether, under Rule 23, a plaintiff who had a cause of action against a single defendant could represent a class against the single defendant and an unrelated group of defendants who had engaged in similar conduct to that of the single defendant. *Id.* at 462. The Court's analysis revolved around Rule 23 and specifically the requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit noted that the plaintiffs could not sustain a putative class action against defendants who did not injure them. *La Mar*, 489 F.2d at 466 (applying Fed. R. Civ. P. 23). But in dicta, the court noted that there may be two situations that could qualify as exceptions to this rule: when "all injuries are the result of a conspiracy or concerted scheme[]," and "instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.*

Because the plaintiff did not meet the requirements of Rule 23, the *La Mar* court found that it was not necessary to rule on the issue of Article III standing. Thus, the court did not decide the issue of standing at all, but merely "assume[d]

the presence of standing" for purposes of that appeal.[6] *Id.* at 464. Out of this dicta, the juridical-link doctrine was born.

The district court misapplied the analysis in *La Mar* by failing to recognize that the juridical-link doctrine discussed in *La Mar* applies only to the requirements of Rule 23, not to Article III standing. Specifically, the district court assumed that "[t]he Ninth Circuit, in *La Mar* . . . recognized two exceptions to the *ordinary standing rule*." (Order Lifting Stay, R.124, PageID.2291 (emphasis added).) The Ninth Circuit did not make such an error. *See Bahamas Surgery Ctr.*, 820 F. App'x at 566 n.4 (noting that *La Mar* assumed standing.)

Moreover, as the district court acknowledged, this Court has never adopted the juridical-link doctrine. (*Id.*) In fact, this Court has only discussed it in two cases. *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1205 (6th Cir. 1983); *Perry v. Allstate Indem. Co.*, 953 F.3d 417 (6th Cir. 2020). In *Thompson*, the Court determined that the defendants were not juridically linked. In *Perry*, this Court acknowledged the critical distinction between Rule 23 requirements and Article III standing, recognizing that the juridical-link doctrine is a "sparingly applied *class-certification* doctrine," used to "meet the Federal Rule of

---

[6] The Supreme Court has since ruled that standing cannot be assumed. *Steel Co.*, 523 U.S. at 94.

Procedure 23's class certification requirements." 953 F.3d at 420 n.2 (emphasis added). Although the plaintiff in *Perry* argued that the doctrine applied to Article III standing, this Court did not decide either way. *Id.* In sum, this Court has recognized that the juridical-link doctrine is a *class-certification* doctrine used under Rule 23, and has never held that it creates an exception to the essential, threshold doctrine of standing.

Nonetheless, the district court construed this silence as permission to ignore the Supreme Court's direction in *Lujan* and *Spokeo*. It was not free to do so. Instead, like other courts faced with a similar invitation to gloss over the lack of standing, the court should have rejected that invitation and applied the normal standing rules. *See, e.g.*, *Proctor*, 2022 WL 67248, at *15; *Senne v. Kansas City Royals Baseball Corp*., 2021 WL 3129460, at * 16 (N.D. Cal. July 23, 2021); *In re Zantac (Ranitidone) Prods. Liability Litig.*, 2020 WL 786674, at *16 (S.D. Fla. Dec. 31, 2020) (the juridical-link doctrine "does not" confer standing); *Kombal v. Allstate Ins. Co.*, 2020 WL 5816498, at *4-*5 (D. Mont. Sept. 30, 2020) (confining the doctrine to assessing adequacy and typicality under Rule 23); *Blackburn v. Dare Cnty.*, 486 F. Supp. 3d 988, 995 (E.D.N.C. 2020) (noting that the juridical-link doctrine "does not cure plaintiffs' lack of standing under Article III of the Constitution"); *Rolaff v. Farmers Ins. Co.*, 2020 WL 4939172, at *3 (D. Okla. Mar. 19, 2020) (noting the Tenth Circuit had not adopted the doctrine and declining to

do so). This would have resulted in the dismissal of the non-Gratiot County

Defendants, thereby preventing certification of the class as to those Defendants.

### C.    The juridical-link doctrine does not vary the requirements or analysis of Article III standing.

Four circuits have addressed the question of whether the juridical-link

doctrine can confer standing. All but the Seventh Circuit have ruled that it cannot,

and even the Seventh Circuit has since backed away from its earlier ruling. The

reason for this is straightforward: none of the proposed justifications for allowing a

judge-made doctrine to vary the requirements of Article III are convincing.

The Second Circuit's analysis provides the clearest reasoning as to why the

juridical-link doctrine does not alter normal standing analysis. In *Mahon v. Ticor

Title Insurance,* the district court ruled that the juridical-link doctrine did not apply

to questions or Article III standing. 683 F.3d at 61. The Second Circuit affirmed,

explaining that it would be "unprecedented" to interpret Article III to allow suit

against defendants who caused the plaintiff no injuries. *Id.* at 62.

The Second Circuit canvassed the various applications of the juridical-link

doctrine to provide Article III standing, concluding that it was "flawed" to use the

juridical-link doctrine to either (1) merge the question of standing with a Rule 23

analysis, or (2) decide class certification first, and then determine standing based

upon the entire class. *Id.* at 63-64c. The *Mahon* court's analysis provides the

clearest explanation as to why the juridical-link doctrine does not alter the "normal" standing analysis.

The *Mahon* court explained that the approach of merging the analysis of standing and class certification is flawed because a federal rule cannot modify a constitutional doctrine. *Id.* at 64. The court emphasized that a plaintiff must have Article III standing as to each claim the plaintiff seeks to press. *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 91, 100 (2006). The court rejected the "merger" approach for the same reason this Court recently reiterated—the plaintiff must demonstrate that the requested relief would redress the plaintiff's alleged injury in fact as to each defendant. *See Universal Life*, 2022 WL 1699304, at *5.

The *Mahon* court then rejected the concept of addressing class certification and then assessing the standing of the class as a whole. *Mahon*, 683 F.3d at 64-65. The Second Circuit assessed this approach principally by analyzing the Seventh Circuit's adoption of that approach in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002). *Id.* To reach its conclusion, the Seventh Circuit relied on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), reasoning that *Ortiz*'s statement that "class certification issues are . . . logically antecedent to Article III concerns" means that standing is not relevant until after the class certification stage. *Payton*, 308 F.3d at 680.

As the Second Circuit explained, *Ortiz* does not "stand[] for such a broad proposition." *Mahon*, 683 F.3d at 64. The Supreme Court's language in *Ortiz* regarding the logical antecedence of class certification issues appears "to be a description of the case before it, and not . . . a general directive regarding the order in which a court should treat class certification and Article III standing in every class action." *Id.* The Second Circuit explained that the same is true for *Amchem*, where the "Court made clear that it was the dispositive nature of the class certification issues *in the particular case* that permitted the exception to the usual rule of dealing with the Article III issues first." *Id.* (emphasis added). In other words, the Court's "logical antecedence" language "is relevant when resolution of class certification obviates the need to decide issues of Article III standing;" however, it is not an instruction to courts "to always treat class certification first and to treat the class as the relevant entity for Article III purposes." *Id.*

Other courts have also reached the conclusion that *Ortiz* does not mean that a court can overlook standing issues until after class certification. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("To be sure, if it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification. After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise."); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir.

2004) (noting that *Ortiz* "does not require courts to consider class certification before standing" and holding that "[t]he district court correctly addressed the issue of standing before it addressed the issue of class certification"). *See Wong*, 789 F.3d at 896 (rejecting the argument that the juridical-link doctrine allows a court to assess standing requirements with reference to the class as a whole).

The approach of certifying the class and then addressing standing as to the class also conflicts with other established principles. First, as noted above, standing is a "cradle-to-grave requirement" that must be met at the time of filing. *Fialka-Feldman*, 639 F.3d at 713. If the plaintiff does not have standing as to a defendant at the time of filing, all subsequent actions as to that defendant are void—including class certification. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (judgment is void if the court lacked subject-matter jurisdiction). The only action that a district court can take is dismissal of the defendant. *See Steel Co.*, 523 U.S. at 64. Second, the fact "[t]hat a suit may be a class action . . . adds nothing to the question of standing . . . ." *Spokeo*, 136 S. Ct. at 1547 n.6 (citation omitted). Assessing standing based on the class would create a class-action specific approach to standing.

More recently, the Ninth Circuit itself ruled that the juridical-link doctrine was "irrelevant" to the question of standing—in part because the *La Mar* court "assumed" standing existed for purposes of the appeal. *Bahamas Surgery Ctr.,*

29

*LLC*, 820 F. App'x at 566 n.4 (citing *La Mar*, 489 F.2d at 464). There, the named plaintiff brought a putative class action against two defendants related to their manufacture of surgical gowns; however, the named plaintiff had never purchased any gowns from defendant Halyard Health. *Id.* at 565. The district court certified a class, held a jury trial which found for the class, and issued a judgment against both defendants. *Id.* On appeal, the Ninth Circuit vacated the judgment because the named plaintiff had no injury traceable to Halyard's conduct, and could not "seek relief on behalf of itself or any other members of the class." *Id.* But the court did not stop there; it directed the district court to dismiss the entire case against Halyard on remand. *Id.* at 566. "Even if other class members have valid claims against Halyard, that cannot retroactively cure the district court's *improper certification* of a class wherein the named plaintiff . . . lacked standing to pursue those claims." *Id.* at 565-66 (emphasis added). The district court's erroneous application of the juridical-link doctrine risks the same sort of colossal waste of time and resources here.

The Seventh Circuit is the only federal court of appeals to have adopted the juridical-link doctrine to circumvent the bedrock principles of standing. *Payton*, 308 F.3d at 680. As discussed above, the Second Circuit has thoroughly explained why the *Payton* court's reasoning is incorrect. Moreover, the Seventh Circuit has since "appeared to retreat" from *Payton*, treating standing as "an antecedent legal

issue." *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 922 (N.D. Ill. 2012) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

This retreat is appropriate because the Supreme Court has never indicated that a case can proceed *at all* against a defendant in the absence of Article III standing. Recently, the Supreme Court even went so far as to vacate a judgment approving a class-action *settlement* because the Court questioned whether named plaintiffs had Article III standing. *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam). The Court indicated that this drastic step was necessary because of the Court's "obligation to assure ourselves of litigants' standing under Article III," an obligation that "extends to court approval of proposed class settlements" because "federal courts lack jurisdiction if no named plaintiff has standing." *Id.*

Fox *must* establish that he had Article III standing against *all* the County Defendants at the time the case was filed. *Spokeo*, 136 S. Ct. at 1547 n.6. The juridical-link doctrine is irrelevant to this fundamental requirement because if the district court lacked subject-matter jurisdiction at the outset, it cannot retroactively acquire jurisdiction to resolve the dispute. Fox has suffered no injury fairly traceable to the conduct of the non-Gratiot County Defendants. Accordingly, the district court should not have certified the class. Instead, all claims against the non-Gratiot County Defendants should have been dismissed.

31

## II.    The district court failed to apply correctly Rule 23's criteria and could not do so on the exceedingly limited record before the court.

### A.    The district court failed in its duty to conduct a "rigorous analysis" into whether the Rule 23 criteria were met.

Class certification here is also erroneous because of the district court's deficient application of Rule 23. Class actions are an exception to the general rule that litigation is conducted by and on behalf of the named parties only. *See*, *e.g.*, *Dukes*, 564 U.S. at 348. The party seeking class certification "must affirmatively demonstrate compliance" with Federal Rule of Civil Procedure 23. *Id.* at 350 (cleaned up); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Rule 23 mandates a two-step process to determine that the case can be pursued as a class action. *Zehentbauer Family Land LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019). First, the party seeking class certification must demonstrate that the proposed class meets the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Second, if the proponent of class certification demonstrates each of the prerequisites, then the proponent must demonstrate that the proposed class fulfills one of the categories of Rule 23(b). Fed. R. Civ. P. 23(b).

Class certification is only "appropriate if the court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *In re*

*Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). The "rigorous analysis" requirement is critical because it ensures that each of the Rule 23 requirements for certification have actually been satisfied. *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

Generally, a class is not maintainable as a class action by virtue of its designation as such in the pleadings. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. Accordingly, "the determination should be predicated on more information than the pleadings will provide. . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted). Although a hearing before the class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

Here, the district court's partially *ex parte* class-certification decision falls far short of the "rigorous analysis" required by Rule 23. To begin, the court

certified the class concurrently with its decision to lift the stay that had been in place for over ten months. Consequently, eight Defendants had not had the opportunity to respond to the class-certification motion because the case was stayed. To be clear, the court ruled before lifting the stay, setting a briefing schedule, or communicating the court's intention to rule on the class-certification motion while the stay was in place. None of these Defendants were afforded "an opportunity to present evidence on the maintainability of the class action." *Weathers*, 499 F.2d at 1200.

Nor did the district court "probe behind the pleadings." *Falcon*, 457 U.S. at 160. Classes are rarely certified before the defendants have deposed the named plaintiff because that testimony is needed to examine the plaintiff's adequacy as a class representative. *See, e.g.*, *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1313 (4th Cir. 1978) ("discovery is to be encouraged" on the class issue). Here, not only was the class certified before any discovery occurred, but also before four Counties' responsive pleadings were even due, and for the Alcona Defendants, on the very day that the case commenced because they were served after the case was stayed. *Contra Am. Med. Sys.*, 75 F.3d at 1086. The district court shrugged these concerns off, and concluded, with no additional explanation, that the record was "adequate" for purposes of Rule 23 because it "includes documentary evidence." (Order Lifting Stay, R.124, PageID.2295.) It is difficult to imagine how a record that

34

consists only of the Plaintiff's complaint and certification motion and *some* of the Defendants' responsive pleadings and responses to the certification motion creates an "adequate" record that suffices for purposes of the "rigorous analysis" required by Rule 23.

In fact, the district court's analysis here mirrors the less-than-rigorous analysis that this Court found wanting in *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996). There, this Court held that the district court "failed in its duty to conduct a 'rigorous analysis' " into whether the Rule 23 requirements were met when one of the defendants "had no opportunity to respond to the complaint, let alone conduct any discovery on any of the plaintiffs or to submit a brief to the district court or seek a hearing addressing the class actions issues." *Id.* at 1086. The district court here distinguished *American Medical Systems* on the basis that the defendant was challenging an amended order of certification entered only three days after the defendant was served. (Order Lifting Stay, R.124, PageID.2295.) But the critical factor in *American Medical Systems* was not the timing of the order; it was the fact that the defendant was not given a meaningful opportunity to present evidence on the maintainability of the class action. *See Am. Med. Sys.*, 75 F.3d at 1086 (collecting cases).

The same is true here. Because the district court certified the class at the same time it lifted the stay, multiple Defendants had no opportunity to respond to

the Plaintiff's complaint, let alone conduct any discovery on any of the plaintiffs, submit a brief to the district court on the certification question, or seek a hearing addressing the class actions issues. Thus, the district court, like the court in *American Medical Systems*, failed to conduct a "rigorous analysis" under Rule 23.

**B.    The district court incorrectly concluded that the record here demonstrates that class certification is allowable.**

*1.    The district court had no evidence before it to determine that Fox is an adequate class representative.*

Rule 23(a) requires the party seeking class certification to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *Am. Med. Sys.*, 75 F.3d at 1083 (citations omitted). The district court said that Fox was an adequate representative because he and the absent class members "share the same goal: maximizing recovery." (Order Lifting Stay, R.124, PageID.2302.) The adequacy requirement is not so facile.

The party seeking class certification has the burden to prove class-certification prerequisites are met. *Am. Med. Sys.*, 75 F.3d at 1079. This Court has held that there are two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests

36

of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). As the district court acknowledged, " 'to satisfy the adequate representation requirements under Rule 23 . . . there must be an absence of a conflict of interest, and the presence of common interests and injury.' " (Order Lifting Stay, R.124, PageID.2302 (quoting *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998)).) To demonstrate adequacy of representation, the party seeking class certification must identify some evidence—even "basic affidavits regarding the representatives' knowledge of the case." *Bond v. Antero Res. Group*, 438 F.R. D. 187, 196 (S.D. Ohio 2018).

The district court could not make any findings on these criteria because the record is devoid of evidence of Fox's adequacy as a class representative. Defendants were not permitted to depose Fox, and he did not even submit a "basic affidavit" in support of the motion for class certification. Instead, the court concluded that Fox and the class members have a shared goal of "maximizing recovery." (Order Lifting Stay, R.124, PageID.2302). That falls short of a rigorous analysis of the adequacy requirement.

The court then shifted the burden of proving the adequacy of representation to the defendants, stating that "Defendants hint at the existence of antagonisms between Plaintiff, his counsel, and the class but provide not evidence in support." (*Id.*) But it is Fox's obligation to show that there are no conflicts of interest

between him and the proposed class. He offered no evidence on this issue. Here, the proposed class consists not, as the district court assumed, of individuals as to whom "Defendants unlawfully retained surplus proceeds after seizing property to satisfy a tax delinquency." (*See id.* at PageID.2301.) Rather, the class includes all individuals whose property was taken by Defendants and who did not receive the difference between their property's fair-market value and the tax delinquency. (*Id.*) The latter group contains (1) those persons whose property was sold at auction for more than the delinquent taxes and fees; (2) those whose property was sold at auction for less than the delinquent taxes and fees; and (3) those whose property was never sold at auction.

These individuals have very different likelihoods of success. Only the individuals in the first group have state-law claims or a state-law property interest that can allegedly have been taken. *Rafaeli*, 952 N.W.2d at 466 & n.134. The latter two groups do not have state-law property interests subject to a taking and can only recover if the fair-market value of the property that is seized for the non-payment of delinquent taxes has been taken. The Michigan Supreme Court has rejected that argument. *Id.* at 465-66; *see also Proctor*, 2022 WL 67248, at *9-10. So too have the federal courts. *Bowles v. Sabree*, No. 20-12838, 2022 WL 141666, at *10 (E.D. Mich. Jan. 14, 2022); *Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at *3-*4 (E.D. Mich. Feb. 26, 2021) (appeal pending). Accordingly, Fox—who holds

a surplus-proceeds claim—is incentivized to use the fair-market-value claims as leverage for a settlement based on surplus proceeds and so abandon the interests of the much more numerous class members who do not have surplus-proceeds claims.

Since the class-certification decision, an additional distinction must be drawn. In December 2020, the Michigan Legislature amended the GPTA to provide an orderly process whereby a delinquent taxpayer can claim any surplus proceeds generated from the sale of their tax-foreclosed property. Mich. Comp. Laws § 211.78t. This statutory remedy provides a person's exclusive state-law remedy for all class members whose properties were sold after 2020. *See id*. § 211.78t(11). Fox cannot pursue this state-law remedy, and has now notified all class members who can pursue this remedy for sales in 2021 that they ought not do so—even though he himself cannot avail himself of the speedier resolution that the state statute provides. (*See* Ex parte Notice Order, R.260, PageID.6816.)

The district court did not address whether these groups, with their conflicting interests, could be adequately represented by Fox, and the court's cursory conclusion does not satisfy the first *Senter* criterion.

The district court undertook no meaningful analysis of whether Fox met *Senter*'s second criterion requirements. An adequate class representative must have sufficient "knowledge of and involvement in the class action" so that they can supervise class counsel and "protect the interests of the class against the possibly

competing interest of the attorneys." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d

718, 727 (11th Cir. 1987); *see Maywalt v. Parker & Parsley Petroleum Co.*, 67

F.3d 1072, 1077-78 (2d Cir. 1995). *See also Ibe v. Jones*, 836 F.3d 516, 529 (5th

Cir. 2016) ("Rule 23(a)(4) . . . requires the class representatives to possess a

sufficient level of knowledge and understanding to be capable of controlling or

prosecuting the litigation." (cleaned up)). Here, there is absolutely no indication

from Fox that he is knowledgeable about or involved at all in the litigation as to

Gratiot County, much less the various other counties. Indeed, it is impossible to

conceive of how Fox could provide direction and oversight of claims against the

non-Gratiot County Defendants against whom he has no claims and no expectation

of receiving any compensation ever. And for that reason alone, the district court

abused its discretion by certifying the class.

> ###   2.   *The district court failed to conduct a rigorous analysis of whether the proposed class action was superior to county-by-county class actions in state court.*

The district court asserted without analysis that the proposed multi-county

class action was superior to individualized determinations or county-by-county

class actions. (Order Lifting Stay, R.124, PageID.2303.) This *ipse dixit* is the

opposite of rigorous analysis. Moreover, the district court again put the burden on

the Defendants by concluding that "*Defendants* have failed to show that litigation

scattered across the Michigan courts would be preferable to a class action." (Order

Lifting Stay, R.124, PageID.2203 (emphasis added).) *Contra Am. Med. Sys.*, 75 F.3d at 1079.

Here, the federal court is faced with determining whether to erect a district-wide class action that will ultimately require individual plaintiffs to represent a separate class as to each county. The district court offered no analysis as to why such an action should be lodged in the federal courts rather than pursued, for example, in the state circuit courts. Those circuit courts have the virtue of (a) being located in the county where the foreclosures occurred; (b) familiar with the tax-foreclosure process because of the courts' long history with the GPTA; (c) greater knowledge of Michigan law which not only governs the state-law claims but also provides the underlying law to establish property rights for purposes of the federal claims; and (d) the benefits of federalism gained by allowing the Michigan governmental entities to resolve this quintessentially state dispute.

The best evidence that the district court got its superiority analysis wrong is the continuation of other litigation by Class Counsel. Among the issues that remain in this case are (1) whether class counsel's fair-market-value takings theory is viable; (2) whether the *Rafaeli* decision is retroactive; and (3) whether the Legislature's amendments to the GPTA provide the exclusive remedy for some or all of the class members here. Class Counsel is litigating all of these issues *in state court.*

Class Counsel is pursuing putative competing class actions on behalf of other named plaintiffs against at least 17 of the counties that are defendants in this case. *See Proctor*, 2022 WL 67248. After class certification here, Class Counsel argued to the Michigan Court of Appeals in *Proctor* that the Michigan Supreme Court did not really mean it when the *Rafaeli* decision held that plaintiffs could not maintain a takings claim for fair market value. And Class Counsel insisted that the Michigan Court of Appeals *sua sponte* determine whether *Rafaeli* is retroactive (even though the County defendants sought to defer that assessment to a case where the issue was decided by the trial court). Class Counsel are pursuing these issues in competing state-court class actions because the issues arise under Michigan law and can only be definitively by state courts. After losing on both issues in a published Michigan Court of appeals decision, *see Proctor, supra*, class counsel is pursuing an appeal to the Michigan Supreme Court.

The Michigan-law nature of the underlying issues has also led Class Counsel to litigate challenges to the amendments to the GPTA in state court. When Class-Counsel tried to get the district court to issue a snap decision on the constitution-ality of those amendments (Emergency Mot. for Order re Class & Public Act 256, R.228, PageID.6143), the district court abstained because class counsel had already chosen to raise those issues in state court (3/29/2022 Op. & Order, R.237, PageID.6376.)

Indeed, this class action is so inferior that Class Counsel is pursuing resolution of federal questions in a competing case. In *Freed v. Thomas*, Class Counsel has sued Gratiot County—the only county as to which Fox actually has standing—on behalf of a class member to recover surplus proceeds and the purported fair-market-value of a property that was foreclosed and sold because of the failure to pay property taxes. Class counsel obtained a judgment for surplus proceeds and has appealed the ruling principally because the district court rejected Class Counsel's fair-market-value theory. *Freed*, No. 17-CV-13519, at *8, *appeal docketed*, No. 21-1339 (6th Cir. Apr. 7, 2021).

The history of this action demonstrates that one of the principal benefits of a class action—providing a single forum to efficiently and economically resolve a large number of similar claims—*see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)—has been lost because of the need to address issues in state courts. Class Counsel's own conduct in pursuing these cases in alternative venues and not once seeking to stay any of those cases because of this class action demonstrates that this class action is not the superior method for addressing the various claims at issue.

There is an additional reason to conclude that the district court got superiority wrong. At the time that the district court ruled on class certification, the court was aware of the legislation to amend the GPTA and provide an exclusive

43

remedy to some or all of the class members here. The merits ere and in Class Counsel's other cases all arise because of Michigan's GPTA which governs a fundamental issue reserved for states—how they will assess and collect state taxes. Indeed, each sovereign's right to assess taxes in our federal system is crucial to their independence. *McCulloch v. Maryland*, 17 U.S. 316, 376 (1819). The Michigan Legislature had adopted legislation to address the effect of the Michigan Supreme Court's *Rafaeli* decision. The legislature is responsible for balancing the interests of the residents of Michigan, their government institutions, and delinquent taxpayers within the confines of the state and federal constitutions. The district court concluded that because it disliked the draft legislation, it—and not the legislature—should provide the mechanism for resolving these claims. Although the courts have the authority to adjudicate actual controversies arising under the law between property owners and the government, that authority is not exclusive. Nor is it useful here to curtail effectively the legislature's ability to pursue effective legislation as to the roughly one-third of counties subject to the class-certification order. The district court failed to undertake a rigorous analysis of the superiority of the Michigan Legislature's now-adopted framework for resolving surplus-proceeds claims for some and, if the Michigan Supreme Court determines that *Rafaeli* is fully retroactive, then all of the class members.

In sum, the district court's rush to certify the class here was the result of an analysis far less exacting than required by this Court's and the Supreme Court's precedents. This, too, warrants reversal of the class-certification decision.

### 3. *The district court failed to engage in a rigorous analysis of the predominance factor.*

Rule 23 also requires that a party seeking class certification demonstrate common questions of law or fact "predominate over any questions affecting only individual members" of the class. Fed. R. Civ. P. 23(b)(3). Here, although there are common questions of law, the district court abused its discretion by failing to give due weight to the difficulty in assessing who the injured person or persons are where many of the tax-foreclosed properties were subject to third-party liens from financial institutions, judgment creditors, the IRS, and others. The district court treated the effect of liens on the subject properties as just a damages issue and irrelevant to class certification. But the liens on some properties eclipsed, by orders of magnitude, any surplus proceeds generated by the sale of the property. Far from an issue of damages, the lien issue will create questions of who is entitled to claim any surplus proceeds from the sale of a given property. Further, the absence of lienholders from this case may prevent the district court from being able to provide complete relief because, without the lienholders' participation, the court cannot adjudicate their rights. *See Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940)

("It is elementary that it is not within the power of any tribunal to make a binding adjudication of the rights in personam of parties not brought before it by due process of law."). For this additional reason, the district court abused its discretion by certifying the class.

## CONCLUSION AND REQUESTED RELIEF

Seldom has a class-certification decision violated so many constitutional and procedural rules. The district court erred in relying on the juridical-link doctrine to sidestep the constitutionally mandated Article III standing requirements and certify the class. The court also erred in certifying the class without engaging in a rigorous analysis that allowed all parties a fair opportunity to present evidence on the maintainability of the class action. Accordingly, the County Defendants respectfully request that this Court reverse the district court's certification decision, hold that the court does not have subject-matter jurisdiction over the non-Gratiot County Defendants pursuant to the juridical-link doctrine, and remand with instructions to dismiss the non-Gratiot defendants from the case.

Dated: June 1, 2022

s/ Matthew T. Nelson
  Matthew T. Nelson
  Ashley G. Chrysler
  Warner Norcross + Judd LLP
  150 Ottawa Avenue NW, Suite 1500
  Grand Rapids, MI 49503-2832
  (616) 752-2000

s/ Theodore W. Seitz
  Theodore W. Seitz
  Kyle M. Asher
  Dykema Gossett PLLC
  201 Townsend Street, Suite 900
  Lansing, MI 48933-1529
  (517) 374-9100

mnelson@wnj.com
achrysler@wnj.com
*Attorneys for Alcona County*

s/ *Charles A. Lawler*
Charles A. Lawler
Clark Hill
212 E. Cesar E. Chavez Avenue
Lansing, MI 48906
(517) 318-3100
clawler@clarkhill.com

*Attorneys for Crawford and Presque Isle Counties*

s/ *Frank Krycia*
Frank Krycia
Aaron C. Thomas
Macomb County Corporation Counsel
1 S. Main Street – 8th Floor
Mt. Clemens, MI 48043
(586) 469-6346
frank.krycia@macombgov.org
aaron.thomas@macombgov.org

*Attorneys for Macomb County*

tseitz@dykema.com
kasher@dykema.com

*Attorneys for Washtenaw County*

s/ *Gregory M. Meihn*
Gregory M. Meihn
Matthew Wise
GORDON REES SCULLY MANUKHANI
37000 Woodward Avenue, Suite 225
Bloomfield Hills, Michigan 48304
gmeihn@grsm.com
mwise@grsm.com

*Attorneys for Ogemaw County*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation pursuant to Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains 10,498 words of Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word 2016.

Dated:  June 1, 2022

*s/Matthew T. Nelson*
Matthew T. Nelson
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503-2832
(616) 752-2000
mnelson@wnj.com

## CERTIFICATE OF SERVICE

This certifies that Appellants' Brief was served June 1, 202, by electronic mail using the Sixth Circuit's Electronic Case Filing system on all parties of record.

*s/ Matthew T. Nelson*
Matthew T. Nelson
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503-2832
(616) 752-2000
mnelson@wnj.com

## DESIGNATION OF RECORD

| Doc. Entry No. | Date Entered | Page ID Range | Description of Doc. |
|---|---|---|---|
| R.1 | 06/25/2019 | 1-19 | Complaint |
| R.17 | 09/04/2019 | 220-239 | First Amended Complaint |
| R.85 | 01/10/2020 | 1146 | Order Granting Motion for Second Summons, Directing Clerk of Court to Issue Second Summons, Denying as Moot Motion to Dismiss Initial Complaint, and Staying the Case |
| R.92 | 09/14/2020 | 1172 | Plaintiff's Emergency Motion to Lift Stay |
| R.93 | 09/14/2020 | 1278 | Motion for Class Certification |
| R.93-2 | 09/14/2020 | 1386-1400 | Exhibit A – Order in *Hathon v. State of Michigan* |
| R.93-3 | 09/14/2020 | 1401-1429 | Exhibit B – 2018 Foreclosure Data |
| R.93-4 | 09/14/2020 | 1430-1454 | Exhibit C – *Zettel v. Charlevoix County* Transcript |
| R.93-5 | 09/14/2020 | 1455-1468 | Exhibit D – Resumes |
| R.93-6 | 09/14/2020 | 1469-1475 | Exhibit E – Ellison Declaration |
| R.94 | 09/14/2020 | 1477-1480 | Plaintiff's Motion for Expedited Consideration of Plaintiff's Motion for Class Certification and Appointment of Co-Lead Counsel and Class Representative |
| R.120 | 10/06/2020 | 2081 | Washtenaw County's Motion to Dismiss |
| R.122 | 10/14/2020 | 2178 | Crawford and Presque Isle Counties' Motion to Dismiss |
| R.124 | 10/16/2020 | 2284-2303 | Order Granting Motions to Lift Stay, Certify the Class and Appoint Class Counsel, and Denying Motion for Expedited Consideration |

| Doc. Entry No. | Date Entered | Page ID Range | Description of Doc. |
|---|---|---|---|
| R.148 | 01/13/2021 | 3307-3335 | Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, Dismissing the Individual Defendants, and Dismissing County II, IV, V and VII Against the County Defendants |
| R.166 | 03/09/2021 | 3988 | Order Denying Plaintiff's Motion to Continue Proceeding During Pendency of Appeal, Granting in Part and Denying in Part Defendants' Joint Motion to stay Pending Appeals, and Staying the Case for the Pendency of Defendants' Immunity Appeal |
| R.228 | 02/28/2022 | 6143 | Motion for Order Confirming the Scope of the Class; to Declare PA 256 Unconstitutional; to Issue a Writ Against Use of PA 256; and/or Guidance for Class Members Regarding Section 78t |
| R.229 | 02/28/2022 | 6172-6173 | Opinion and Order (1) Overruling and Sustaining in Part Objections to Proposed Curative Notice and (2) Directing Plaintiff to Serve Curative Notice on Affected Class Members |
| R.260 | 04/27/2022 | 6816 | Opinion and Order Approving and Directing Class Notice for 2021 Claimants |