No. 22-1272

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

THOMAS A. FOX, and all those similarly situated,

     Plaintiff – Appellee,

v.

ALCONA COUNTY, MI, by its Board of Commissioners; CHERYL FRANKS, in her official and individual capacities; WASHTENAW COUNTY, MI; CATHERINE MCCLARY; OGEMAW COUNTY, MI, by its Board of Commissioners; DWIGHT MCINTYRE, in his official and individual capacities; CRAWFORD COUNTY, MI; KATE M. WAGNER; JOSEPH V. WAKELEY; MACOMB COUNTY, MI; LAWRENCE ROCCA; PRESQUE ISLE COUNTY, MI; BRIDGET LALONDE

     Defendants - Appellants

and

SAGINAW COUNTY, MI, et al

     Defendants

On Appeal from the United States District Court
for the Eastern District of Michigan – Northern Division
Honorable Thomas L. Ludington, District Judge

## PLAINTIFF-APPELLEE'S BRIEF

E. POWELL MILLER
THE MILLER LAW FIRM, P.C.
950 W. University Dr. #300

Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com

PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

*Class Counsel for Appellee*
*(Additional Counsel Listed in*
*Signature Block)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

COUNTER STATEMENT IN SUPPORT OF ORAL ARGUMENT .................. xii

COUNTER JURISDICTIONAL STATEMENT ...................................... 1

COUNTER STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW ....... 7

INTRODUCTION .............................................................................. 8

STATEMENT OF THE CASE............................................................... 10

SUMMARY OF ARGUMENT ............................................................. 15

STANDARD OF REVIEW .................................................................. 17

ARGUMENT ................................................................................... 18

    I.      The District Court Did Not Abuse Its Discretion When It Followed Well-Settled Law and Applied the Juridical Link Doctrine to Certify the Class ............................................................................ 18

          A. The District Court Did Not Abuse Its Discretion in Certifying the Class ...................................................................... 18

          B. Article III Standing Is Considered in Terms of the Class.............. 24

          C. Petitioners' Arguments Against Application of the Doctrine Fail 26

          D. The Court Should Not Dismiss the Claims Against the non-Gratiot Defendants..................................................................... 31

    II.     The District Court Did Not Otherwise Abuse Its Discretion in Certifying the Class and Appointing Class Counsel Under Rule 23 .. 36

          A. The Court's Analysis Was Sufficient and Correct......................... 36

B.  The District Court Did Not Abuse its Discretion in Certifying the Class ............................................................................................... 39

1.  The Counties' arguments are inappropriate for a Rule 23(f) appeal ................................................................................ 39

2.  The District Court conducted a rigorous analysis ............. 41

3.  The District Court did not abuse its discretion with respect to discovery ...................................................................... 43

4.  The District Court did not abuse its discretion in defining the class ......................................................................... 46

5.  The District Court did not abuse its discretion in determining that Fox is an adequate class representative . 49

6.  The District Court did not abuse its discretion in determining that this class action is superior to state court actions .............................................................................. 54

a.  PA 256 is inferior to this Class Action ..................... 55

i.  PA 256 is inferior ........................................... 55

ii.  The District Court did not err in failing to find that PA 256 was superior to this case ............. 55

b.  The District Court did not abuse its discretion in finding that this Class Action was superior to the state court class actions that the Counties' preferred PA 256 purports to bar ..................................................... 58

c.  The District Court did not abuse its discretion in rejecting the Counties' flawed predominance arguments ................................................................ 62

CONCLUSION ....................................................................................... 66

# TABLE OF AUTHORITIES

## Cases

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)....................................................................34

*Albert Hanson Lumber Co. v. United States*,
261 U.S. 581 (1923)............................................................................47

*Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n*,
814 F.2d 32 (1st Cir. 1987)..................................................................35

*Almota Farmers Elev. & Whse Co. v. U.S.*,
409 U.S. 470 (1973)............................................................................47

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................... 25, 52

*Arevalo v. Fid. Nat'l Fin., Inc.*,
2007 WL 9712070 (W.D. Tex. Feb. 14, 2007)......................................33

*Arreola v. Godinez*, 546 F.3d 788
(7th Cir. 2008)....................................................................................22

*Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*,
820 F. App'x 563 (9th Cir. 2020) ........................................................29

*Baker v. F & F Inv.*,
420 F.2d 1191 (7th Cir. 1970) .............................................................19

*Barnard v. State*,
Case No. 20-000254-MM (Mich. Ct. Cl. Feb. 1, 2021) ......................59

*Behrens v. Pelletier*,
516 U.S. 299 (1996)..............................................................................2

*Bible Believers v. Wayne Cty.*,
2013 WL 2048923 (E.D. Mich. May 14, 2013) .......................... 42, 58

*Bible Believers v. Wayne Cty., Mich.*,
805 F.3d 228 (6th Cir. 2015) ..............................................................42

*Blackburn v. Dare Cty.*,
2020 WL 5535530 (E.D.N.C. Sept. 15, 2020) ....................................28

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ......32

*Bond v. Antero Res. Group*,
438 F.R. D. 187 (S.D. Ohio 2018)......................................................50

*Bowles v. Sabree*,
2022 WL 141666 (E.D. Mich. Jan. 14, 2022) ....................................48

*Broughton v. Brewer*,
298 F. Supp. 260 (S.D. Ala. 1969) ......................................................27

*Cash v. Swifton Land Corp.*,
  434 F.2d 569 (6th Cir. 1970) ...............................................41
*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ...............................................41
*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) .................................................4
*Chipman v. Nw Healthcare Corp.*,
  2012 MT 242, 366 Mont. 450 ............................................29
*Christy v. Heritage Bank*,
  2013 WL 6858008 (M.D. Tenn. Nov. 8, 2013)....................50
*Chu v. Wells Fargo Investments, LLC*,
  2009 WL 3061974 (N.D. Cal. Sept. 24, 2009) .....................34
*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................4
*City of Tampa v. Addison*,
  979 So. 2d 246 (Fla. Dist. Ct. App. 2007) ...........................22
*Clark v. Alan Vester Auto Grp., Inc.*,
  2009 WL 2181620 (N.C. Super. July 17, 2009) ...................19
*Clarkson v. Coughlin*,
  783 F. Supp. 789 (S.D.N.Y. 1992) .......................................34
*Contract Buyers League v. F & F Inv.*,
  300 F. Supp. 210 (N.D. Ill. 1969) ........................................19
*D.J. through O.W. v. Connecticut State Bd. of Educ.*,
  2019 WL 1499377 (D. Conn. Apr. 5, 2019).........................35
*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) ...............................................51
*Daunt v. Benson*,
  999 F.3d 299 (6th Cir. 2021) ...............................................33
*Davidson v. Henkel Corp.*,
  302 F.R.D. 427 (E.D. Mich. 2014) .......................................22
*Davidson v. Worldwide Asset Purchasing, LLC*,
  914 F. Supp. 2d 918 (N.D. Ill. 2012)....................................22
*DeAllaume v. Perales*,
  110 F.R.D. 299 (S.D.N.Y. 1986) .................................... 22, 27
*Digital Equipment Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994).................................................................3
*Doss v. Long*,
  93 F.R.D. 112 (N.D. Ga. 1981)............................................22
*Driver v. Helms*,
  74 F.R.D. 382 (D.R.I. 1977) ................................................19

*Easter v. Am. West Fin.*,
  381 F.3d 948 (9th Cir. 2004) ................................................................25
*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ................................................................20
*Fialka-Feldman v. Oakland University Board of Trustees*,
  639 F.3d 711 (6th Cir. 2011) ................................................................30
*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ................................................................25
*Follette v. Vitanza*,
  658 F.Supp 492 (N.D.N.Y. 1987)...........................................................23
*Frank v. Gaos*,
  139 S. Ct. 1041 (2019)..........................................................................21
*Freed v. Thomas*,
  976 F.3d 729 (6th Cir. 2020) ........................................................ 11, 12
*Gentry v. Wayne Cty.*,
  2013 WL 12180801 (E.D. Mich. July 2, 2013)....................................65
*Grainger, Jr. v. Cty. of Ottawa*,
  2021 WL 790771 (W.D. Mich. Mar. 2, 2021)......................................23
*Graves v. Walton County Bd. of Educ.*,
  686 F.2d 1135 (5th Cir. 1982) ..............................................................35
*Hathon v. State*,
  Case No. 19-000023-MZ (Mich. Ct. Cl.) ............................... 59, 63, 64
*Haynes v. Marshall*,
  887 F.2d 700 (6th Cir. 1989) ..................................................................5
*Hudson v. City of Chicago*,
  242 F.R.D. 496 (N.D. Ill. 2007)............................................................23
*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) ................................................................52
*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ........................................................ 37, 45
*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018)...................................................................29
*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001) .......................................................32
*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
  435 F. Supp. 3d 845 (N.D. Ill. 2020)....................................................29
*In re Computer Memories Secs Litigation*,
  111 F.R.D. 675 (N.D. Cal. 1986).........................................................19
*In re Delta Air Lines*,
  310 F.3d 953 (6th Cir. 2002) ........................................................ 17, 39

*In re DuPuy Orthopaedics, Inc. ASR Hip Implants Prods. Liab. Litig.*,
   953 F.3d 890 (6th Cir. 2020) ..................................................30
*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017)..................................33
*In re Ivan F. Boesky Sec. Litig.*,
   120 F.R.D. 624 (S.D.N.Y. 1988) ...........................................34
*In re Lorazepam & Clorazepate Antitrust Litig.*,
   289 F.3d 98 (D.C. Cir. 2002)...............................................41
*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................37
*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   69 Fed. R. Serv. 3d 791 (M.D. Pa. 2007) ............................ 46, 49
*In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*,
   722 F.3d 838 (6th Cir. 2013) ......................... 17, 36, 46, 49
*In re Zantac (Ranitidone) Prods. Liability Litig.*,
   2020 WL 786674 (S.D. Fla. Dec. 31, 2020).................................30
*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2019 WL 1397228 (E.D. Va. Feb. 6, 2019)...............................29
*Jabbar-El v. Sullivan*,
   811 F. Supp. 265 (E.D. Mich. 1992)......................................40
*Jacobs v. United States*,
   290 U.S. 13 (1933)........................................................47
*Jett v. Warrantech Corp.*,
   436 F. Supp. 3d 1170 (S.D. Ill. 2020)....................................29
*Kamm v. California City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ........................................ 43, 52
*Kirkpatrick v. J.C. Braford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ....................................... 51, 52
*Knick v. Twp. of Scott, Pennsylvania*,
   139 S. Ct. 2162 (2019).....................................................47
*La Mar v. H & B Novelty & Loan Co.*,
   489 F.2d 461 (9th Cir. 1973) .................................... 18, 20, 25
*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
   897 F.3d 88 (2d Cir. 2018)...............................................29
*Lauro Lines S.R.L. v. Chasser*,
   490 U.S. 495 (1989)........................................................5
*Lewis v. Casey*,
   518 U.S. 343 (1996)......................................................30
*Luyando v. Bowen*,
   124 F.R.D. 52 (S.D.N.Y. 1989) ..........................................28

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012)............................................................. 27, 28
*Mather Inv'rs, LLC v. Larson*,
   720 N.W.2d 575 (Mich. App. 2006)...........................................65
*May v. CitiMortgage, Inc.*,
   2013 WL 6549011 (E.D. Mich. Dec. 13, 2013) ................................65
*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)..................................................... 51, 52
*McCulloch v. Maryland*,
   17 U.S. 316 (1819)..........................................................................57
*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .....................................................30
*Minter v. Wells Fargo Bank, N.A.*,
   2013 WL 1795564 (D. Md. Apr. 26, 2013)......................................46
*Molock v. Whole Foods Market Group, Inc.*,
   952 F.3d 293 (D.C. Cir. 2020).......................................................25
*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) ................................................ 19, 23
*Moore v. Comfed Sav. Bank*,
   908 F.2d 834 (11th Cir. 1990) ......................................................20
*Ms. L. v. U.S. Immigration and Customs Enforcement ("ICE")*,
   330 F.R.D. 284 (S.D. Cal. 2019) ............................................... 46, 49
*Mudd v. Busse*,
   68 F.R.D. 522 (N.D. Ind. 1975), *on reconsideration*, 437 F. Supp 505 (N.D. Ind.
   1977), *aff'd*, 582 F.2d 1283 (7th Cir. 1978) ............................... 19, 23
*Murphy v. Aaron's, Inc.*,
   2020 WL 2079188 (D. Colo. Apr. 30, 2020).....................................28
*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) .........................................................29
*Nat'l Licorice Co. v. NLRB*,
   309 U.S. 350 (1940).........................................................................65
*Nelson v. Warner*,
   2020 WL 3547949 (S.D.W. Va. June 30, 2020)................................28
*Olden v. LaFarge Corp.*,
   383 F.3d 495 (6th Cir. 2004) ............................................... 24, 25, 26
*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999).........................................................................25
*Perry v. Allstate Indemnity Co.*,
   953 F.3d 417 (6th Cir. 2020)...........................................................21

*Peters v. Blockbuster, Inc.*,
    65 S.W.3d 295 (Tex. App. 2001)..........................................................................19

*Petrolito v. Arrow Financial Servs., LLC*,
    221 F.R.D. 303 (D. Conn. 2004)..........................................................................36

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)................................................................................................2

*Rafaeli, LLC v. Oakland Cty.*,
    952 N.W.2d 434 (Mich. 2020)..................................................................... passim

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ...............................................................................17

*Roberts v. New York City*,
    295 U.S. 264 (1935)..............................................................................................47

*Rolaff v. Farmers Ins. Co.*,
    2020 WL 4939172 (D. Okla. Mar. 19, 2020) .............................................. 27, 30

*Rutherford v. City of Cleveland*,
    137 F.3d 905 (6th Cir. 1998) ...............................................................................53

*Santiago v. City of Chicago*,
    19 F.4th 1010 (7th Cir. 2021) ..............................................................................36

*Senne v. Kansas City Royals Baseball Corp.*,
    2021 WL 3129460 (N.D. Cal. July 23, 2021) .....................................................30

*Senter v. GMC*,
    532 F.2d 511 (6th Cir. 1976) ...............................................................................50

*Shanks v. City of Dallas, Tex.*,
    752 F.2d 1092 (5th Cir. 1985) ...............................................................................4

*Shelton v. Pargo Inc.*,
    582 F.2d 1298 (4th Cir. 1978) .............................................................................52

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..............................................................................................25

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).........................................................................................21

*Stafford v. Briggs*,
    444 U.S. 527 (1980)..............................................................................................19

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)................................................................................................25

*Summit Med. Assocs., P.C. v. Pryor*,
    180 F.3d 1326 (11th Cir. 1999) .........................................................................3, 4

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
    806 F.Supp.2d 942 (W.D. Tex. 2011) .................................................................26

*Texas Commerce Bank Nat'l Ass'n v. Wood*,
    994 S.W.2d 796 (Tex. App. 1999).......................................................................19

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*,
  97 FRD 668 (N.D. Ill. 1983) .................................................................................. 22
*Thole v. U.S. Bank, N.A.*,
  140 S. Ct 1615 (2020) ........................................................................................... 24
*Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*,
  709 F.2d 1200 (6th Cir. 1983) .............................................................................. 18
*Thompson v. Board of Education*,
  71 F.R.D 398 (W.D. Mich. 1976) .................................................................. 21, 65
*Triad Assocs., Inc. v. Robinson*,
  10 F.3d 492 (7th Cir. 1993) .................................................................................... 3
*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ........................................................................... 34
*Turnage v. Norfolk Southern Corp.*,
  307 Fed. Appx. 918 (6th Cir. 2009) .............................................. 36, 37, 50, 51
*United States v John J. Felin & Co.*,
  334 U.S. 624 (1948) ............................................................................................... 47
*United States v. Miller*,
  317 U.S. 369 (1943) ............................................................................................... 47
*United States v. Reynolds*,
  397 U.S. 14 (1970) ................................................................................................. 47
*United States v. Van*,
  931 F.2d 384 (6th Cir. 1991) .................................................................................. 4
*United States v. Virginia Electric Co.*,
  365 U.S. 624 (1960) ............................................................................................... 47
*Vallario v. Vandehey*,
  554 F.3d 1259 (10th Cir. 2009) ........................................................................... 39
*Ward v. Dixie Nat. Life Ins. Co.*,
  595 F.3d 164 (4th Cir. 2010) ............................................................................... 36
*Washington v. Lee*,
  263 F. Supp. 327 (M.D. Ala. 1966) ..................................................................... 27
*Watson v. City of Southlake*,
  594 S.W.3d 506, (Tex. App. 2019), *review denied* (Feb. 14, 2020) ................. 29
*Wayside Church v. Van Buren Cty.*,
  847 F.3d 812 (6th Cir. 2017) .................................................................................. 8
*Weathers v. Peters Realty Corp.*,
  499 F.2d 1197 (6th Cir. 1974) .............................................................................. 32
*Weiss v. Winner's Circle*,
  1995 WL 755328 (N.D. Ill. Dec. 14, 1995) ........................................................ 19
*Whitlock v. FSL Mgmt., LLC*,
  843 F.3d 1084 (6th Cir. 2016) .............................................................................. 44

*Will v. Hallock*,
    546 U.S. 345 (2006) ........................................................................2, 3

*Wong v. Wells Fargo Bank N.A.*,
    789 F.3d 889 (8th Cir. 2015) .............................................................29

*Worledge v. Riverstone Residential Grp., LLC*,
    2015 MT 142, 379 Mont. 265 ............................................................29

*Yan v. ReWalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020).................................................................35

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) .............................................................17

*Zettel v. County of Leelanau et al.*,
    Case No. 18-0591-26-CZ (Aug. 31, 2020) .................................. 59, 63

*Zeyen v. Boise Sch. Dist. No. 1*,
    2019 WL 403864 (D. Idaho Jan. 30, 2019) ................................ 26, 30

## Statutes

28 U.S.C. § 1291 ................................................................................2
MCL § 211.78l ...............................................................................54
MCL § 211.78t ...............................................................................54
MCL 211.78k(6) .............................................................................63
MCL 211.78k(5)(c) .........................................................................63
Public Act 256 of 2020 ........................................................... passim

## Rules

Fed. R. Civ. P. 23 ................................................................... passim
Fed. R. Civ. P. 23(f) ............................................................... passim
Fed. R. Civ. P. 23(a) ................................................... 29, 38, 52
Fed. R. Civ. P. 23(b)(2) .................................................................31

## Treatises

1 William B. Rubenstein,
    Newberg on Class Actions § 2:6 (5th ed.) ..........................................30
William B. Rubenstein,
    Newberg on Class Action (Fifth) § 7:16 (2013) .................................44
13B Charles Alan Wright et al.,
    Fed. Prac. & Proc. Juris. § 3531.9 (3d ed. 2011)...........................27
7AA Charles Alan Wright et al.,
    Fed. Prac. & Proc. Civ. § 1785.1 (3d ed. 2011)..............................28
*Homeowners' Rights: How Courts Can Prevent States From Stealing Home Equity*
    *During Property Tax Foreclosure,*
    41 REV. BANKING & FIN. L. 385 (2021) ...................................... 47, 48
MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.26 (2004) ..............................44
Wright & Miller,
    Federal Practice & Procedure § 1785.1 (2d ed. 2005).......................26

## COUNTER STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Appellant governments committed an enormous and systematic constitutional violation. They are asking this Court to frustrate the Class Member taxpayers' efforts to secure the return of their illegally taken property. And they are asking the Court to do so by overturning this Court's longstanding recognition of a commonsense class certification doctrine that allows the victims of government overreach to secure redress. For these reasons, the Class requests oral argument to the extent the Court deems it necessary.

## COUNTER JURISDICTIONAL STATEMENT

This Court granted the Counties leave to appeal under Fed. R. Civ. P 23(f). Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2. While the Class opposed the Rule 23 petition, it concedes that this Court's grant of the petition vests this Court with jurisdiction over this appeal. Plaintiff's Response to Petition, Case No. 20-110, Dkt. 11, Page ID # 9.

While the Court's grant of the Rule 23(f) petition gives it jurisdiction to consider the District Court's class certification decision, the Counties also ask this Court to mandate the dismissal of the claims against all but one of them. This is improper.

Indeed, the Counties' brief focuses on the District Court's application of the juridical link doctrine. But they argue repeatedly that this is an issue of class certification, insisting that it cannot determine standing. *See, e.g.*, Appellants' Brief, Dkt. 45, Page ID ## 30-31; 34-41. As the Class discusses below, this is misguided: because standing is considered in terms of the class, the analyses effectively merge with one another. But if, *arguendo*, the Counties are correct—that the doctrine can support certification without establishing standing—then the Court's analysis here is limited to whether the District Court abused its discretion in certifying the Class; if the standing issue is distinct, then it remains outstanding and outside the scope of this appeal.

Independent of the issue whether the District Court should have certified the Class, this Court does not now have jurisdiction to consider standing or jurisdiction on an interlocutory basis. The Counties seek to do just this by arguing that they have raised a "standing" issue; that standing is always a threshold issue; and that therefore, as long as they are properly before this Court on their class certification argument, the Court must hear their standing appeal as well.

They are incorrect. 28 U.S.C. § 1291 generally limits this Court's jurisdiction to appeals of final orders. Fed. R. Civ. P 23(f) is a narrow exception. Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2, Page ID # 4; *See* Fed. R. Civ. P 23(f).

Nor do standing or jurisdiction fall within the narrow collateral order doctrine. "[T]he collateral order doctrine accommodates a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). "The requirements for collateral order appeal have been distilled down to three conditions: that an order '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). "The

conditions are 'stringent'" in order to avoid overwhelming the usual finality requirement and the resulting hazard of successive appeals. *Id.* at 349–50 (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)) (additional citations omitted). Accordingly, "the 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered[.]" *Digital Equipment*, 511 U.S. at 868 (citation omitted). "[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership." *Will*, 546 U.S. at 350.

Thus, courts have pervasively rejected the Counties' implicit argument that standing is reviewable on an interlocutory basis. "[T]he question of standing does not fit within the collateral order doctrine, and, therefore, . . . Appellants may not as of right take an immediate interlocutory appeal on this issue" because, "[a]lthough a district court's standing determination conclusively resolves a disputed question and settles an important issue separate from the merits of the case, courts have recognized that the issue of standing is not effectively unreviewable on appeal from a final judgment and, thus, fails the last prong of the collateral order doctrine." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334–35 (11th Cir. 1999) (discussing cases). *See also Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 496–97 n.2 (7th Cir. 1993) (standing is not appealable immediately under collateral order

doctrine); *Shanks v. City of Dallas, Tex.*, 752 F.2d 1092, 1099 n.9 (5th Cir. 1985)

(rejecting interlocutory appeal of standing on ground that issue was "enmeshed"

with merits of cause of action); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 474–

75 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.,

Inc.*, 209 F.3d 43 (2d Cir. 2000), (refusing to review standing question on

interlocutory appeal because resolution of issue was merely a "'step [ ] towards final

judgment in which [it] will merge'") (citation omitted)).[1]

As the *Summit Med. Assocs.* court recognized, Judge Batchelder in this Court

did argue in a concurrence that "the issue of standing necessarily comes before an

appellate court when another issue is properly appealed." *Summit Med. Assocs.,

P.C.*, 180 F.3d at 1335 n.8 (discussing *Children's Healthcare Is a Legal Duty, Inc.

v. Deters*, 92 F.3d 1412, 1419 (6th Cir. 1996) (Batchelder, J., concurring)). But the

---

[1] Appellants cite *United States v. Van*, 931 F.2d 384 (6th Cir. 1991) for its language that federal courts have a duty to ensure that there is subject-matter jurisdiction over the dispute. *Van*, 931 F.2d at 387. But *Van* does not stand for the proposition that this Court should consider all parties' standing regardless of the issue before it. Rather, in *Van*, this Court considered the standing of the *appellant*: "Before we can address [appellant]'s arguments on appeal we must consider an issue not raised by the parties, namely that of [its] standing to appeal," because "we must determine whether the named appellant has a personal stake in the outcome of the controversy before this court." *Id.* at 387–88. The Counties here are the appellants; they cannot plausibly be claiming that they lack standing to make their appeal.

*Children's Healthcare* majority declined to follow this approach, and it does not appear to have been later adopted in this or any other Circuit.

Appellants likewise challenge the District Court's decision on the theory that, based on their standing argument, the Court lacked jurisdiction. But as with standing, "challenges to jurisdiction do not present immediately appealable collateral issues." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989) (characterizing *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989)).

As a practical matter, the issue is significant because, as a member of a panel of this Court has reasoned, the District Court can exercise its discretion to address any infirmities in the certification of management of the Class. Indeed, a member of the earlier panel of this Court itself, during oral argument, suggested that adding class representatives could resolve any standing issues should the juridical link doctrine be found inapplicable. *See* Transcript of Sixth Circuit Oral Argument, at 9:9–19, RE 256-4, Page ID ## 6678–6694 ("[I]sn't it the prerogative of the court to manage the case in the way that it determines is appropriate? . . . The plaintiff may move to subclass, or the court may suggest subclassing, which might entail additional class representatives."); ("[Defendants] argue[] that . . . you must have a named representative out of the group of people in each county so that each named separately defendant also has a named representative plaintiff . . . can't people be named and move forward?"). Given the District Court's broad discretion in

-5-

managing a class action under Fed. R. Civ. P. 23, and this Court's recognition of its authority in addressing this very issue, this Court should avoid needlessly exceeding the bounds of review under Fed. R. Civ. P. 23(f).

## COUNTER STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW

I.    Did the District Court abuse its discretion in applying the juridical link doctrine in certifying the Class?

**Appellee answers:**       **No.**

II.    Did the District Court otherwise abuse its discretion in certifying the Class?

**Appellee answers:**       **No.**

# INTRODUCTION

The Appellant counties foreclosed on Class Members' properties for non-payment of taxes. They auctioned off the properties for amounts often far greater than the tax debts; kept the surplus; and refused to refund the difference between what the Class Members owed and what the properties were worth. "In some legal precincts [the Counties'] sort of behavior is called theft." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 823–24 (6th Cir. 2017) (Kethledge, J., dissenting) (noting "the gross injustice" of the counties' conduct). At the very least, it was indisputably a taking. *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020).

This case is a class action seeking redress for this constitutional violation, brought by one victim against multiple counties that engaged in the systematic conduct. The District Court appropriately applied the well-established juridical link doctrine in certifying the class. The doctrine permits the victim of systemic government misconduct to bring a class action on behalf of victims who suffered the same injury at the hands of different government units committing the same misdeed. Indeed, the doctrine's use here reflects its most narrow and sensible application. Courts are nearly unanimous that it can be employed when multiple government bodies pursue a common course of conduct based on the same statute; it makes no sense to make plaintiffs appear from every geographic area in order to protect their rights. Other courts have gone further and applied the concept to the

private sector, but that is not at issue here. Even in the public sector context, the circumstance here is *sui generis*: counties voluntarily administering the same statewide statute to accomplish identical takings. *See* Opinion on Sovereign Immunity, RE 227, Page ID # 6133 (describing voluntary statewide program). This Court should not deprive their victims of well-established tools to ensure government accountability.

## STATEMENT OF THE CASE

Thomas A. Fox was the owner of residential property in Gratiot County (the "Property"), First Am. Compl., RE 17, Page ID # 222 (¶16), which, like the other Counties, has affirmatively elected to administer the tax foreclosure process instead of allowing the State of Michigan to administer it. *Id.*, Page ID # 224 (¶33). *See also* MCL 211.78(6). As of the auction sale, the Property had an outstanding tax delinquency of $3,091.23. *Id.*, Page ID # 222 (¶18). The County seized ownership of the Property on or about February 21, 2017. *Id.* (¶19). The Property had a fair market value of at least $50,400.00. *Id.* (¶20). The County later sold the Property at a tax auction on August 16, 2017 for only half its actual value—$25,500.00. *Id.* (¶21). The Property had equity—that is, the difference between what the Property was worth and the tax delinquency that Plaintiff owed. *Id.*, Page ID # 223 (¶¶23–24). Plaintiff had a property interest in this equity. *Id.*, Page ID ## 231-233 (¶¶52, 63, 71). But the County seized it and failed to return it. *Id.*, Page ID # 223 (¶25). The County even retained the entire value of the sales proceeds even though the sales proceeds were $22,408.77 more than the amount of the tax delinquency.

On June 25, 2019, Plaintiff filed a class action lawsuit on behalf of the victims from the counties of Alcona, Alpena, Arenac, Bay, Clare, Gladwin, Gratiot, Isabella, Midland, Montmorency, Ogemaw, Oscoda, Saginaw, and Tuscola against those same counties and their treasurers.

On September 4, 2019, Plaintiff filed an Amended Complaint adding the counties of Crawford, Genesee, Huron, Jackson, Lapeer, Lenawee, Macomb, Otsego, Presque Isle, Roscommon, Sanilac, St Clair, and Washtenaw as Defendants. First Amended Complaint, RE 17. The putative class members were the owners of over 9,000 parcels of property across the Eastern District of Michigan. Mot. for Class Cert., RE 93, Page ID #1295.

This is not the only case to challenge Defendants' conduct. Petitioners express apparent displeasure with the number of cases involving class counsel. Appellants' Brief, Dkt. 45, Page ID ## 11, 51, 53. This is puzzling: the Counties' central argument here is that there *should* be multiple cases, while Plaintiff seeks to minimize the number.

Some of these other "tax equity" cases have had an impact here. On January 10, 2020, the District Court stayed this case pending this Court's decision in *Freed v. Thomas*, Case No. 18-2312 (6th Cir.). Order, RE 85, Page ID ## 1146–1154. Like many defendants, those in *Freed* had argued that the District Court lacked jurisdiction over the case under the Tax Injunction Act and related principle of comity.

Then, on July 17, 2020, the Michigan Supreme Court found unanimously that, as Plaintiff has argued, Defendants' conduct constituted an unconstitutional taking. *Rafaeli*, 952 N.W.2d 434.

On September 14, 2020, Plaintiff moved to lift the stay, for class certification, and for expedited consideration. Motion to Lift Stay, RE 92, Page ID ## 1170–1275; Motion to Certify Class, Appointment of Class Counsel and Class Representative, RE 93, Page ID ## 1277–1311; Motion for Expedited Consideration, RE 94, Page ID ## 1476–1487. In the papers, Plaintiff noted that the *Rafaeli* decision had caused a deluge of new lawsuits throughout the district—at least 28 at just that time—risking a morass of litigation. Motion to Lift Stay, RE 92, Page ID # 1182. This was no mere "fear," as the Counties suggest. Appellants' Brief, Dkt. 45, Page ID # 21.

On September 30, 2020, while these motions were pending, this Court issued its decision in *Freed*. It found that jurisdiction in federal court was proper. *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020).

On October 16, 2020, the District Court certified the Class. Order Certifying Class, RE 124, Page ID # 2305. The District Court named Mr. Fox as the class representative to act on behalf of the Class and appointed class counsel. *Id.*

The Counties claim that this was "effectively" the same day as two Defendants were served, because they were served during the stay. This is, at most, a legal fiction; all Defendants had the Amended Complaint in hand for months before the class certification order. As the District Court noted, "Plaintiff's amended complaint was filed in September 2019, and the most recent Defendants were served in January 2020." Order Certifying Class, RE 124, Page ID # 2295 (citing RE 17; 87; 89).

Similarly, the decision of some Defendants to not even try to respond to the class certification motion was their own.

On October 29, 2020 and October 30, 2020, respectively, Alpena, Arenac, Bay, Clare, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Midland, Montmorency, Oscoda, Otsego, Roscommon, Saginaw, Sanilac, St. Clair, and Tuscola Counties; and Alcona, Crawford, Macomb, Ogemaw, Presque Isle, and Washtenaw Counties each filed petitions under Fed. R. Civ. P 23(f) seeking this Court's review of the District Court's class certification decision. Permission for Leave to Appeal, Case No. 20-110, Dkt. 1-2; 20-111, Dkt. 1-2.

Subsequently, on November 4, this Court denied *en banc* review of *Freed*, and on November 12 the mandate issued. *Freed v. Thomas, et al.*, Case No. 18-2312, Dkt. 92.

Then, on January 13, 2021, the District Court denied-in-part and granted-in-part the various motions to dismiss. Order, RE 148. The District Court found that Counts I, III, VI, and VIII may proceed against the County Defendants; dismissed Counts II, IV, V, and VII; and dismissed the treasurers individually due to qualified immunity. *Id.* at Page ID ## 3334–3335. The Counties took an immediate appeal, Notice, RE 153, claiming that they are immune under the Eleventh Amendment. In their Brief on Appeal, they also argue that the District Court should not have certified the Class because Plaintiff was only injured by Gratiot County and not the other

-13-

Appellants, although this issue falls outside the collateral order doctrine and therefore did not warrant appellate consideration at that time.

On March 9, 2021, the District Court granted the Counties' Motion to Stay the case pending the Eleventh Amendment appeal, Order Granting Defs.' Joint Motion to Stay, RE 166, Page ID # 3988, although on July 15, 2021, it lifted the stay to address a third-party solicitor's misleading efforts to target Class Members. *See* Order Granting Emergency Motion to Show Cause, RE 171.

On October 20, 2021, one of these third parties appealed the District Court's protective measures. Asset Recovery's Notice of Appeal, RE 211.

On February 22, 2022, this Court rejected the Counties' sovereign immunity defense. Opinion on Sovereign Immunity, RE 227, Page ID ## 6138–6142. On April 22, 2022, the District Court lifted the stay that it had imposed pending the appeal. Order Lifting Stay, RE 258.[2]

On February 24, 2022, the Counties again raised their standing arguments in the third-party's appeal in this Court. Counties' Appellee Brief, Case No. 21-1653, Dkt. 37, Page ID ## 15–28. On June 1, 2022, this Court largely rejected that appeal.

---

[2] In addition to the partial lifting to address the third-party solicitation issues, the stay has been partially lifted on March 29, 2022 for purposes of limited discovery and class notice. Order Partially Lifting Stay, RE 237.

Case No. 21-1653 Opinion from Regarding ARI's Communications, RE 285, Page ID # 7306.

Then, on March 30, 2022, the same panel that had addressed the Counties' Eleventh Amendment appeal granted the Rule 23(f) petition. Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2.

## SUMMARY OF ARGUMENT

Gratiot County was one of many counties to illegally take property in administering its tax foreclosure process. Plaintiff was one of its victims. He brought this class action against Gratiot County and other counties that are juridically linked to it because they all committed the *same* unconstitutional conduct pursuant to the *same* state statute.

The District Court did not abuse its discretion in certifying the Class based upon the juridical link doctrine. The doctrine permits a plaintiff to represent a class of persons injured by multiple defendants carrying out a common course of conduct, including those class members injured by defendants that did not directly injure the named plaintiff. While the application of the doctrine to private sector defendants is controversial, it is nearly unanimously applied where, as here, the defendants are public sector entities acting pursuant to a common statutory scheme. And for good reason: the victims of government abuse should be able to efficiently join together to secure redress for common injuries. While this Court has not previously found the

doctrine applicable to the facts before it, it has repeatedly recognized the doctrine. The Court should decline the Counties' request that it overturn its jurisprudence.

Appellants also argue that the Court should dismiss the non-Gratiot Counties from this case because, they say, the named plaintiff, and therefore the Class, lack standing against them. This argument fails for two reasons. First, standing is analyzed in terms of the class as certified. Second, dismissal of defendants would be outside the scope of this Rule 23(f) appeal, especially given that the District Court could ameliorate any problems posed by its application of the juridical link doctrine.

Appellants further argue that, aside from the juridical link issue, the District Court abused its broad discretion in certifying the Class under Rule 23. They are incorrect. This case, where the Class Members suffered identical injuries stemming a common course of misconduct, is tailor-made for class certification. The Court conducted a careful and thorough analysis in certifying the Class. And the Counties' proposed state court alternatives to this case are grievously flawed processes that would only serve to let them avoid accountability and keep much (if not all) of the property they illegally took.

## STANDARD OF REVIEW

The only issue that is properly before this Court is class certification. District Court class certification decisions are afforded a "deferential standard of review." *In re Delta Air Lines*, 310 F.3d 953, 959–60 (6th Cir. 2002). The "deferential standard of review" is not the regular abuse of discretion. *Id.* Rather, appellate review of a class certification decision is "narrow" and "very limited," and this Court "will reverse the class certification decision . . . only if [Defendant] makes a strong showing that the district court's decision amounted to a clear abuse of discretion." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). A district court is given "substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015)).

# ARGUMENT

I.    **The District Court Did Not Abuse Its Discretion When It Followed Well-Settled Law and Applied the Juridical Link Doctrine to Certify the Class.**

   A.    **The District Court Did Not Abuse Its Discretion in Certifying the Class.**

The District Court followed the law of this Circuit and the consensus of courts nationwide when it certified a class including victims of counties other than Gratiot, because the juridical link doctrine permits a plaintiff who has been injured by a local government's administration of a state law to bring a class action on behalf of class members injured by other local governments that administered the same law. This doctrine affords the victims of government misconduct a critical tool to protect their rights and thereby serves as an important protection against government abuse.

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) was one of the first cases to articulate this concept. *Id.* at 462. This Court recognizes the doctrine. *See, e.g.*, *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204–05 (6th Cir. 1983). *Thompson* found that the doctrine did not apply to the facts of the case, but explained that it can apply in "[i]nstances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id*. This is most often found where defendants "'are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged

to be unconstitutional.'" *Id*. at 1205 (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527–28

(N.D. Ind. 1975)). The doctrine has been pervasively applied.[3] As the Eleventh

Circuit explained, it "is simpler and more economical" to permit the named plaintiffs

---

[3] *See e.g.*, *Clark v. Alan Vester Auto Grp., Inc.*, 2009 WL 2181620, at *8 (N.C. Super. July 17, 2009) (sufficient juridical link where multiple entities were related to a common owner); *Driver v. Helms*, 74 F.R.D. 382, 406 (D.R.I. 1977), *aff'd in part, rev'd in part*, 577 F.2d 147 (1st Cir. 1978), *rev'd on other grounds sub nom.*; *Stafford v. Briggs*, 444 U.S. 527 (1980) (where named plaintiffs alleged a concerted program of covert mail intercepts and related misconduct, they had standing to raise subclass members' claims against former officials whose tenure did not correspond to the dates of the alleged individual mail openings because officials were juridically linked); *Weiss v. Winner's Circle*, 1995 WL 755328 (N.D. Ill. Dec. 14, 1995) (where defendant assigned plaintiffs' contracts to various lenders, juridical link doctrine applied because of the interconnectedness of defendant/lenders relationship, even though there was no case or controversy between some of the plaintiffs and some of the lenders, as "it would be expeditious to allow the [ ] defendants to be joined and obtain a single resolution"); *Contract Buyers League v. F & F Inv.*, 300 F. Supp. 210, 214 (N.D. Ill. 1969) (applying the juridical link doctrine in certifying a class where the plaintiffs argued that the defendants' action in discriminating against plaintiffs in housing contracts "resulted from a concert and pattern of discriminatory activity including other similar contracts") *aff'd sub. nom.*; *Baker v. F & F Inv.*, 420 F.2d 1191 (7th Cir. 1970); *Texas Commerce Bank Nat'l Ass'n v. Wood,* 994 S.W.2d 796, 807 (Tex. App. 1999) (a class plaintiff's representation may extend to other defendants who have a "juridical relationship" to the defendant that allegedly caused plaintiff's injury); *Peters v. Blockbuster, Inc.*, 65 S.W.3d 295, 306 (Tex. App. 2001) (relationship between franchisor and franchises may be enough, as "a corporate affiliation [may be] sufficient to support such a link"); *Samuel v. Univ. of Pittsburgh*, 56 F.R.D. 435 (W.D. Pa. 1972); *Monaco v. Stone*, 187 F.R.D. 50 (E.D.N.Y. 1999); *In re Comput. Memories Secs. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) (juridical link applied where defendant underwriters entered into an agreement among themselves concerning relevant underwriting and were thereby bound to a common course of conduct for purpose of the common-stock offering as "a single resolution of the dispute would be expeditious").

to represent class members pursuing similar claims against different entities in a "[s]ituation in which there was . . . a state or local statute requiring common action by the defendants." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).

Indeed, the Sixth Circuit effectively invoked the doctrine in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422–23 (6th Cir. 1998), even if it did not apply it by name. There, "the Sixth Circuit, using juridical link analysis, concluded that once a plaintiff had established a claim against one of the named defendants, the rest of the determination about the suitability of class certification would proceed as usual under Rule 23" and "[t]he court reasoned that, in the presence of the concerted action contemplated in *La Mar*, it is not necessary that each named plaintiff have individual standing to sue each named defendant." *Payton v. Cty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) *cert. denied*, 540 U.S. 812 (2003) (citing *Fallick*, 162 F.3d at 423). As *Fallick* concluded, "[a] plaintiff who has standing to sue at least one of the named defendants also 'has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.'" *Id.* (quoting *Fallick*, 162 F.3d at 423). *See also Reyes v. Julia Place Condos. Homeowners Ass'n, Inc.*, 2013 WL 442524, at *3 (E.D. La. Feb. 5, 2013) (characterizing *Fallick* as "adopting the

Juridical Link Doctrine for Article III standing because all defendants committed the conduct being challenged").[4]

In fact, as the District Court noted, this Court declined to overturn these decisions just recently, and instead again reasoned that the doctrine remained the law in this Circuit. Order Certifying Class, RE 124, Page ID # 2293, discussing *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020). "The Sixth Circuit explained that the [juridical link] doctrine applies when the case involves a state statute or uniform policy being applied statewide by the defendants." *Id.* (citing *Perry*, 953 F.3d at 420 n.2). In *Perry*, "[t]he problem . . . was that no such statute or statewide policy was at issue." *Id.* Thus, as in *Thompson*, this Court approved the doctrine but found that it did not apply on the facts; "[h]ad [it] intended to reject the doctrine *per se*, it could have easily done so." *Id.*

Indeed, courts nearly unanimously apply the doctrine to government defendants applying a common policy. For example, in *Payton*, the Seventh Circuit

---

[4] In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), cited by the Counties, the named plaintiff could not even satisfy the injury-in-fact requirement at all, whereas Plaintiff here was clearly injured. Likewise, the issue in *Frank v. Gaos*, 139 S. Ct. 1041 (2019) was "whether *any* of the named plaintiffs ha[d] standing to sue" at all. *Frank*, 139 S. Ct. at 1043 (emphasis added). Here, there is no question that the named Plaintiff and all of the Class Members actually suffered injuries in fact. And *Universal Life Church Monastery Storehouse v. Nabors*, --- F.4th ----, 2022 WL 1699304 (6th Cir. 2022) is not a juridical-link case.

made clear in its instructions for remand that, since a "bail bond fee" was "imposed pursuant to a state statute," it was appropriate for named plaintiffs to represent a class that included people from 17 other named counties that had not injured the representative plaintiffs themselves. *Payton*, 308 F.3d at 681. The court saw "no reason to truncate potentially efficient uses of the class action device when they are otherwise not prohibited and here the class action device may be superior to 19, or 102, different cases in each Illinois county challenging the effects of the same state statute." *Id.*[5] *See also id.* at 679; *City of Tampa v. Addison*, 979 So. 2d 246, 253 (Fla. Dist. Ct. App. 2007) ("we agree with the [] argument that the enactment of the various occupational license tax ordinances under the authority of the same enabling legislation . . . provides the requisite 'juridical link'") (citing *DeAllaume v. Perales*, 110 F.R.D. 299, 303–04 (S.D.N.Y. 1986) (other citations omitted)); *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*, 97 F.R.D 668, 673–76 (N.D. Ill. 1983); *Doss v. Long*, 93 F.R.D. 112, 119–20 (N.D. Ga. 1981); *Mudd v. Busse*, 68 F.R.D. 522, 526 (N.D. Ind. 1975), *on reconsideration*, 437 F. Supp. 505 (N.D. Ind. 1977),

---

[5] The Counties' claim that the Seventh Circuit has "retreat[ed]" from *Payton* is misguided. Appellants' Brief, Dkt. 45, Page ID ## 40-41. *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918 (N.D. Ill. 2012) simply "decline[d] to broaden the Juridical Link Doctrine" to a case with a private sector defendant. *Id.* at 923. And the "retreat[ing]" case was not a juridical link case at all; the issue was whether the plaintiff had standing at all given the nature of his injury. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

*aff'd*, 582 F.2d 1283 (7th Cir. 1978); *Follette v. Vitanza*, 658 F. Supp. 492, 508 (N.D.N.Y. 1987) (class certification allowed against sheriffs, marshals, constables, and other civil-enforcement officers empowered to enforce income executions upon wages or other earnings of judgment debtors in various courts of New York's Unified Court System because "a single resolution of plaintiffs' due process claims is preferrable to a countless number of similar actions"); *Monaco v. Stone*, 187 F.R.D. 50 (E.D.N.Y. 1999) (class certification appropriate in an action challenging the constitutionality of the New York statutory scheme for involuntarily committing criminal defendants found incompetent to stand trial for minor felonies and misdemeanors); *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir. 1979), *vacated on other grounds,* 442 U.S. 915 (1979) (county sheriffs implementing a statewide administrative practice of denying contact visitation rights to prison inmates); *Hudson v. City of Chicago*, 242 F.R.D. 496, 502 (N.D. Ill. 2007) (juridical link applicable where Plaintiffs produced evidence that through a common and deliberate scheme, the City and the Chicago Police Department unlawfully used a pretext to arrest and/or ticket members of the proposed Classes; this concerted scheme by Defendants was sufficient to give Plaintiffs standing to challenge this practice).[6]

---

[6] Indeed, the Western District of Michigan has also applied it in a counterpart case. *Grainger, Jr. v. Cty. of Ottawa*, 2021 WL 790771, at *5 (W.D. Mich. Mar. 2, 2021).

**B.      Article III Standing Is Considered in Terms of the Class.**

Courts properly consider standing in terms of the certified class, not the original named plaintiffs. It is ironic that the Counties note that "[t]he U.S. Supreme Court has warned that 'courts sometimes make standing law more complicated than it needs to be,'" Appellants' Brief, RE 45, Page ID # 27 (citing *Thole v. U.S. Bank, N.A.*, 140 S. Ct 1615, 1622 (2020)), before laying out a complex standing argument that needlessly complicates this straightforward rule. In doing so, they are improperly "conflating the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Payton v. Cty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). "[T]he real issues are whether *the plaintiff class* was injured by the defendants [to create standing], and if so, whether the claims of the proposed named plaintiffs are representative." *Id.* at 679 (emphasis added). Every member of the certified class here expressly suffered injury caused by at least one defendant that is redressable by a money judgment. Standing is easily met.

As this Court explained in granting the present Rule 23(f) petition, "[t]he question of subject matter jurisdiction is a prerequisite to class certification and is therefore properly raised in [a] Rule 23(f) appeal." Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2, Page ID # 4, citing *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004). It is well established that, in addressing this question, Article III standing is considered in terms of the class, not the named

plaintiff. In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court recognized that class certification issues are "logically antecedent" to Article III concerns and directed Fed. R. Civ. P. 23 class certification to be "treated first." *Ortiz*, 527 U.S. at 830–31. *See also Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (when a class action is certified, "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the class representative]"); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768–69 (5th Cir. 2020);[7] *Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293, 299 (D.C. Cir. 2020).[8] Therefore, in the *Olden* decision that this Court cited in granting the Rule 23(f) petition, this Court affirmed

---

[7] *Flecha* affirmed that "the Supreme Court has repeatedly instructed that we should first decide whether a proposed class satisfies Rule 23, before deciding whether it satisfies Article III," and contrary to the Counties' suggestion, its analysis of "class representative(s) who present a standing problem" is inapplicable, as there is no question that Mr. Fox has standing against Gratiot County. *Flecha*, 946 F.3d at 769. And *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) found that the juridical link doctrine did not apply on the facts before the court, and the court thus concluded that the district court did not err in considering standing before class certification because the defendants were not juridically linked since they were not "related governmental entities" and "the facts before it did not concern a 'common rule applied by instrumentalities of a single state.'" *Id.* (quoting *La Mar*, 489 F.2d at 469–70).

[8] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) does not undermine *LaMar* or its progeny; it addressed the "doctrine of hypothetical jurisdiction," whereby a court assumes jurisdiction "for the purpose of deciding the merits." *Id. Steel* does not implicate—much less mention—the juridical link doctrine. And there is nothing hypothetical about the Class here.

that the members of a putative class could aggregate their claimed damages in order to reach the jurisdictional threshold for claimed damages. *Olden*, 383 F.3d at 498.[9]

Thus, "once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Payton*, 308 F.3d at 680. This means that the entire class certified pursuant to the juridical link doctrine has standing against all of the defendants. *Id. See also Zeyen v. Boise Sch. Dist. No. 1*, 2019 WL 403864, at *3 (D. Idaho Jan. 30, 2019) (citing Wright & Miller, *Federal Practice & Procedure* § 1785.1 (2d ed. 2005)); *Reyes*, 2013 WL 442524, at *3 (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 953–54 (W.D. Tex. 2011), *overruled on other grounds*, 667 F.3d 570 (5th Cir. 2012)).[10]

## C.    Petitioners' Arguments Against Application of the Doctrine Fail.

---

[9] Thus, while "subject matter jurisdiction is a prerequisite to class certification," Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2, Page ID # 4, the named plaintiff's standing to bring an individual claim against each defendant need not be established prior in time to certification; standing is considered in terms of the as-certified class.

[10] Appellants' allusion to courts "assuming" standing is a red herring. Appellants' Brief, Dkt. 45, Page ID # 33-34. The Class *has* standing.

Despite the foregoing, the Counties claim that the doctrine cannot warrant class certification or establish standing. But the cases they cite pervasively involve private sector defendants.

For example, the issue in *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) was the extent to which the juridical link doctrine can apply to *private sector* defendants.[11] *Id.* Its concurrence affirmed that courts often accept jurisdiction over defendants "'when a party properly in court seeks to sustain its own opposition to a *public act* by invoking the interests of others.'" *Id.* at 67 (citing 13B Charles Alan Wright et al., *Fed. Prac. & Proc. Juris.* § 3531.9 (3d ed. 2011)) (emphasis added by *Mahon*). Thus, it found, "the [] distinction between public and private interests is at the core of the juridical link doctrine." *Id.* at 67–68 (citing *Washington v. Lee*, 263 F. Supp. 327, 328–29 (M.D. Ala. 1966), *Broughton v. Brewer*, 298 F. Supp. 260, 267 (S.D. Ala. 1969), and *DeAllaume v. Perales*, 110 F.R.D. 299, 302 (S.D.N.Y. 1986), all of which applied the doctrine). It recognized that "[a]n exception to [the rule that at least one named plaintiff must have standing vis-à-vis each named

---

[11] In *Rolaff v. Farmers Ins. Co., Inc.*, 2020 WL 4939172 (W.D. Okla. Mar. 19, 2020) defendants included different engineering companies; and the court acknowledged the distinction from *Payton* and this case: "in *Payton*, the Circuit found that the plaintiffs had standing to sue several counties which had not injured them only because their injury stemmed from a single state statute requiring all counties to act in the same manner." *Id.* at *3.

defendant] has been made" when the defendants were "public officials," and that "[i]n these cases standing has been found even though the representative was injured by the conduct of only one of the officials[.]" *Id.* at 68 (citing 7AA Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1785.1 (3d ed. 2011) (footnotes omitted)). In other words, there is a clear consensus that the juridical link doctrine applies to public sector cases.[12] Any disagreement involves the doctrine's application to private sector defendants, which is simply irrelevant here.[13]

Indeed, since *Mahon*, courts throughout the country have continued to cite *Payton* with approval and follow its reasoning. *See, e.g.*, *Nelson v. Warner*, 336 F.R.D. 118, 124 (S.D.W. Va.)); *Murphy v. Aaron's, Inc.*, 2020 WL 2079188, at *8 (D. Colo. Apr. 30, 2020) (citing *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir.

---

[12] The one arguable exception is *Blackburn v. Dare Cty.* There, the plaintiff had not even sued the town where the subject property was located. *Blackburn v. Dare Cty.*, 486 F. Supp. 3d 988, 992–93 (E.D.N.C. 2020). That would be like Mr. Fox suing the other counties in Michigan, but not suing Gratiot County, where the property was located. And even under those circumstances, the court merely said that certification under the doctrine—under the circumstances present there—did not afford unspecified plaintiffs standing against all town defendants where the plaintiffs did not have standing against *any* town defendant, and thus dismissed certain claims. *Id.* at 994–95.

[13] As the Counties note, *Mahon* also discerned an alternative approach to standing among the many courts to apply the doctrine: the "merge[r of] the [class certification] issue with the Article III standing issue" in applying the juridical link doctrine. *Mahon*, 683 F.3d at 63. But *Mahon*'s finding that both approaches were "flawed," *id.*, is moot here: its own concurrence recognized that the doctrine could and should be applied in cases such as this.

2020)); *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1176–77 (S.D. Ill. 2020);

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435

F. Supp. 3d 845, 860 (N.D. Ill. 2020).[14]

Similarly, *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889 (8th Cir. 2015)

merely declined to apply the doctrine to private sector banks. *Bahamas Surgery Ctr.,*

*LLC v. Kimberly-Clark Corp.*, 820 F. App'x 563, 565 (9th Cir. 2020) also involved

private sector defendants. This unpublished, non-precedential memorandum merely

found in a footnote that "[t]he juridical link doctrine is irrelevant to . . . standing

*here*." *Id.* at 565–66, n.4 (emphasis added). *See also* Ninth Circuit Rule 36-3.

Moreover, the Ninth Circuit has affirmed that, "once the named plaintiff

demonstrates her individual standing to bring a claim, the standing inquiry is

concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites

for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1261–

---

[14] *See also Watson v. City of Southlake*, 594 S.W.3d 506, 516 (Tex. App. 2019), *review denied* (Feb. 14, 2020), *review denied* (Apr. 3, 2020); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 1397228, at *22–23 (E.D. Va. Feb. 6, 2019), *report and recommendation adopted as modified*, 400 F. Supp. 3d 418 (E.D. Va. 2019) (citing *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48–51 (1st Cir. 2018); *Payton*, 308 F.3d at 682); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1134 (E.D. Wis. 2016); *Chipman v. Nw Healthcare Corp.*, 2012 MT 242, ¶ 40, 366 Mont. 450, 463–64; *Worledge v. Riverstone Residential Grp., LLC*, 2015 MT 142, ¶ 35, 379 Mont. 265, 278; *Reyes*, 2013 WL 442524, at *3-4.

62 (9th Cir. 2015) (citing 1 William B. Rubenstein, *Newberg on Class Actions* § 2:6 (5th ed.)).[15] *See also Zeyen*, 2019 WL 403864, at \*4 (discussing Ninth Circuit jurisprudence).[16]

In short, while the doctrine's application to claims against private sector defendants remains controversial, its application to the government entities administering a common policy is not. And with good reason. When a state law deputizes local governments to administer an unconstitutional statute,[17] the local governments' misconduct is both inherent and inherently identical.

---

[15] The Counties cite several cases in support of their argument that the doctrine cannot result in classwide standing. But *Fialka-Feldman v. Oakland University Board of Trustees*, 639 F.3d 711 (6th Cir. 2011), cited for its language standing is "a cradle-to-grave requirement that must be met in order to file a claim in federal court," Appellants' Brief, Dkt. 45, Page ID ## 20, 29, was a mootness case in which events rendered further relief impossible. *Fialka-Feldman*, 639 F.3d at 713. It had nothing to do with class actions generally or the juridical link doctrine specifically. *In re DuPuy Orthopaedics, Inc. ASR Hip Implants Prods. Liab. Litig.*, 953 F.3d 890, 893 (6th Cir. 2020) concerned diversity jurisdiction. And *Lewis v. Casey*, supports Plaintiff, affirming that whether the named plaintiffs "may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions." *Lewis v. Casey*, 518 U.S. 343, 395–96 (1996).

[16] *Senne v. Kansas City Royals Baseball Corp.*, 2021 WL 3129460 (N.D. Cal. July 23, 2021), *In re Zantac (Ranitidine) Prods. Liability Litig.*, 2020 WL 786674 (S.D. Fla. Dec. 31, 2020), *Kombol v. Allstate Ins. Co.*, 2020 WL 5816498 (D. Mo. Sept. 30, 2020), and *Rolaff v. Farmers Ins. Co.*, 2020 WL 4939172 (D. Okla. Mar. 19, 2020) all concerned private sector defendants.

[17] Or where, as here, it gives them the option. *See* Opinion on Sovereign Immunity, RE 227, Page ID ## 6139–6141.

Indeed, were the Court to adopt the Counties' reasoning and overturn this Circuit's juridical link jurisprudence, the results could be catastrophic. Suppose that the tax statute at issue here provided for counties to assess a "crucifix tax" against religious institutions based on the number of crucifixes displayed, or, for that matter, based on any other criteria involving the content of religious exercise. Suppose that a named plaintiff in, say, Wayne County stepped forward to seek an injunction against such assessments under Fed. R. Civ. P. 23(b)(2). Of course the District Court would grant an injunction. But under the Counties' theory, it could only do so against Wayne County. Unless and until named plaintiffs stepped forward in each of the state's remaining 82 counties, those counties would not just be free to administer a flagrantly unconstitutional statute; they could even plausibly say that state law required them to do so.

### D.     The Court Should Not Dismiss the Claims Against the non-Gratiot Defendants.

For all of the reasons discussed above, the juridical link doctrine permits certification of the entire Class here, and the Class has standing against all of the Counties, because standing is analyzed in terms of the as-certified Class. Thus, the Counties' request for this Court to overturn the District Court's class certification decision and order the dismissal of the non-Gratiot Counties fails.

The request to have the non-Gratiot Counties dismissed fails for another reason as well: it is a request for a decision on the merits that exceeds the scope an

appeal under Rule 23(f). Rule 23(f) appeals concern certification under Rule 23, and "when determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201 (6th Cir. 1974)*. See also In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 303 (E.D. Mich. 2001) ("[i]n determining a motion for class certification, courts do not examine the merits of the plaintiffs' underlying claims") (citation omitted); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976).

In addressing the Counties' earlier sovereign immunity appeal, this Court agreed that the Counties' standing argument should be addressed by this Court in an ordinary appeal at the end of the case. Opinion on Sovereign Immunity, RE 227, Page ID ## 6135-6138. And while this Court provided for consideration of the issue in granting the Rule 23(f) appeal as discussed above, it also made clear that the Court should consider the issue at this time in the context of class certification. *See* Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2, Page ID # 4 (discussed *supra*) (discussing relationship between subject matter jurisdiction and class certification). It added that, in the sovereign immunity appeal, this Court "recently concluded that defendants could not challenge Fox's standing through an interlocutory appeal, and" that the Rule 23(f) appeal is "therefore . . . defendants'

only opportunity to address this novel issue before a final judgment on the merits." *Id.*

Read together, this Court's pronouncements set forth the law of the case that the Counties' standing arguments apply at this stage to class certification, as opposed to substantive disposition of claims. "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (quotations omitted). "Put another way, the law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case." *Id.* (quotations omitted).

Here, even if, *arguendo*, the Court overturns its earlier juridical link jurisprudence and determines that a class representative is necessary for each County, this can be addressed in a class certification context. Courts generally permit the addition of new class representatives to address any perceived shortcomings with incumbent representatives. *See Arevalo v. Fid. Nat'l Fin., Inc.*, 2007 WL 9712070, at *2 (W.D. Tex. Feb. 14, 2007) ("[T]he practice of allowing the intervention, addition or substitution of class representatives is generally the proper route, especially when the original named plaintiffs may no longer meet the adequacy requirement") (citation omitted); *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or

putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests") (citation omitted); *Chu v. Wells Fargo Investments, LLC*, 2009 WL 3061974, at *1 n.1 (N.D. Cal. Sept. 24, 2009) ("In the context of class actions, courts have historically permitted the replacement or addition of class representatives simply by amending the complaint" (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.26 (2004)). Courts even permit Class Notices to solicit such new class representatives. *In re Ivan F. Boesky Sec. Litig.*, 120 F.R.D. 624, 626 (S.D.N.Y. 1988) (directing notice to the class soliciting potential intervenors as named plaintiffs to "eliminate any supposed atypicality in representation").

This rule adheres with equal force when the issue to be remedied involves standing. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 14-21 (2d Cir. 1997) (reversing district court's denial of motion for leave to add plaintiff in order to cure standing defect in class action brought under Exchange Act, after district court found plaintiff lacked standing to assert claim); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202–03 (S.D.N.Y. 1992) (where defendant argued that class representatives did not have standing to assert claim, "[l]ater intervention by a member of the class is not barred" because "an intervenor that reasonably expected to be represented in the originally filed action possesses an inchoate interest in the class action"); *D.J. through O.W. v. Connecticut State Bd. of Educ.*, 2019 WL

1499377, at *6 (D. Conn. Apr. 5, 2019); *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982) (citing various cases).

While a handful of outlier courts have disagreed, the "better-reasoned authority" allows a court "to entertain and grant a motion to amend filed by a plaintiff who lacks standing to pursue the claim pleaded." *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 36 (1st Cir. 2020) (collecting cases and discussing jurisprudence). The court "s[aw] no reason why . . . permissiveness does not extend to motions seeking to add a named party asserting the exact same claim that is already pleaded in the complaint." *Id.* at 37 (citation omitted). And "there is absolutely nothing at all in Rule 23 that even hints at . . . a bespoke modification of the usual amendment rules in a class action" to forbid an amendment to add a new plaintiff when the initial plaintiff lacked standing. *Id.* at 37–38. Rather, such an amendment should be reviewed according to the usual Rule 15 criteria. *Id.* at 38.

Indeed, a member of the earlier panel of this Court itself, during oral argument, suggested that adding class representatives could resolve any standing issues should the juridical link doctrine be found inapplicable. *See* Transcript of Sixth Circuit Oral Argument, at 9:9–19, RE 256-4, Page ID ## 6678–6694, discussed *supra*. Here, again, there is no problem with Mr. Fox or with his pursuit of claims on behalf of all of the Class Members—except for the fact that Defendants use his doing so as a constant excuse to avoid having to litigate the clear claims against

-35-

them. Plaintiff is prepared to seek the appointment of new class representatives as necessary.

## II. The District Court Did Not Otherwise Abuse Its Discretion in Certifying the Class and Appointing Class Counsel Under Rule 23.

### A. The Court's Analysis Was Sufficient and Correct.

As discussed above, the trial court is afforded broad discretion in deciding whether or not to certify a class. *Turnage v. Norfolk Southern Corp.*, 307 Fed. Appx. 918, 921 (6th Cir. 2009) ("The district court has broad discretion to decide whether to certify a class," citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). While the Supreme Court has instructed courts to undertake a "rigorous analysis" when resolving the issue, *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838, 851 (6th Cir. 2013), this does not interfere with the deference afforded to district courts in addressing certification issues. *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). Nor does it impose a substantial factfinding burden on trial courts. While district courts should not rely solely on pleadings, *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 433 (E.D. Mich. 2014), they need not develop a robust factual record. *Petrolito v. Arrow Financial Servs., LLC*, 221 F.R.D. 303, 307 (D. Conn. 2004) ("The court . . . should not conduct a preliminary inquiry into the merits of the case."). Instead, they maintain broad authority to consider the pleadings and documentary record in fashioning a

certification order. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1096 (5th Cir. 1977) (in the management of class actions, Rule 23 "necessarily vests the district courts with a broad discretion to enable efficacious administration of the course of proceedings before it."). And while a moving party bears the initial burden of establishing the appropriateness of certification, *Am. Med. Sys., Inc.*, 75 F.3d at 1079, this does not impose a formal evidentiary burden. *Young*, 693 F.3d at 537 (it "is not always necessary to probe behind the pleadings before coming to rest on the certification question, because sometimes there may be no disputed factual and legal issues that strongly influence the wisdom of class treatment," and even acceptance of the pleadings as true can be "harmless error") (citation omitted). Rather, the district court is free to consider the claims and record before it in determining compliance with Rule 23. *Turnage*, 307 Fed. Appx. at 921.

Here, the District Court easily met its obligations. And with good reason: this case is a quintessential class action. All of the Class Members suffered the same injury at the hand of the Counties' common course of conduct. First Amended Complaint, RE 17, Page ID ## 225, 231, 232-238 (¶¶ 39, 52, 63, 65, 73–78, 82–86, 93, 95–96, 100, 111–112). Mr. Fox suffered the same injury as everyone else. First Amended Complaint, RE 17, Page ID ## 225, 231, 232–238 (¶¶ 39, 52, 63, 65, 73–78, 82–86, 93, 95–96, 100, 111–112).

Nonetheless, the District Court did not rely merely on the strong *prima facie* case for class certification. Instead, it considered multiple undisputed facts and documents. Most notable, this included the undisputed fact that the Counties had administered the program as alleged, as well as the public records showing the minimum number of class members. Order Certifying Class, RE 124, Page ID # 2296 ("Plaintiff has identified 1,297 parcels foreclosed upon by Defendants in 2018 with a fair market value greater than the tax delinquency," citing Spreadsheet of Tax Foreclosed Properties, RE 93-3, "and estimates far more"). After considering this information, the Court made specific findings:

- "[T]he class is sufficiently numerous to made joinder impossible," as "Plaintiff has identified 1,297 parcels foreclosed upon by Defendants in 2018 with a fair market value greater than the tax delinquency" and "estimates that . . . there may be more than 9,000 putative class members," *id.*, Page ID # 2296;

- "[T]he class shares common issues of fact and law," and "[l]egally, the question of whether [the fact that the putative class was not refunded the value of the property in excess of the delinquent taxes owed] is a cognizable constitutional injury is the same for each of the putative class members," *id.*, Page ID # 2298;

- "Plaintiff has . . . established typicality," as "Plaintiff's claims are typical of the class, all of which boil down to a simple proposition: Defendants unlawfully retained surplus funds after seizing property to satisfy a tax delinquency," *id.*, Page ID ## 2300–2301;

- "Plaintiff has . . . established that he will 'fairly and adequately protect the interests of the class,'" and that there "is no evidence of a conflict of interest," *id.*, Page ID ## 2301–2302 (citing Fed. R. Civ. P. 23(a)(4)); and

- "[T]he common questions pertinent to the class 'predominate over any questions affecting only individual members,'" because "[w]hether Defendants unlawfully retained surplus proceeds is a specific legal question that is subject to generalized proof by all members of the putative class." *Id*., Page ID ## 2302–2303.

**B.    The District Court Did Not Abuse its Discretion in Certifying the Class.**

**1.    The Counties' arguments are inappropriate for a Rule 23(f) appeal**

This Court focused on the juridical link issue when it granted the Counties' Rule 23(f) petition. Order Granting Counties Leave to Appeal, Case No. 20-110, Dkt. 16-2, Page ID ## 3-4. Nonetheless, the Counties use the occasion of the petition's grant to ask this Court to second-guess the District Court's exercise of its broad discretion in otherwise deciding the certify the Class. The Court should decline to do so for several reasons.

*First*, such issues are best deferred until the case's conclusion. *See, e.g.*, *In re Delta Air Lines*, 310 F.3d 953, 959–60 (6th Cir. 2002) (a Rule 23(f) appeal "is never to be routine," and "Rule 23(f) appeals will be the exception, not the norm"). Even after a Rule 23 petition is granted, this Court can decline to resolve particular class certification issues until after the case's conclusion. *Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012) (citing *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009) for the rule that appellate courts have "unfettered" discretion in whether to hear interlocutory appeals from class certification).

*Second*, as explained in more detail on an issue-by-issue basis below, the Counties' arguments largely concern the District Court's procedure, as opposed to the substance of whether class certification is proper under Rule 23. If opportunistic quibbles with the District Court's procedure for granting class certification merit overturning such certification, then the well-established jurisprudence setting forth the district court's broad authority in this province is dead letter. And where, as here, the certification is substantively meritorious, the Counties' argument turns the jurisprudence on its head. Their non-juridical link arguments largely amount to, "certification would have been proper, but this Court should overturn the District Court because of the nuts-and-bolts of how it certified."

*Third*, as also explained below, the District Court retains ongoing authority over the case's management. The issues that the Counties raise could easily have been raised below in the twenty months since certification. Laches bars the Counties from raising them now. *See Jabbar-El v. Sullivan*, 811 F. Supp. 265, 271 (E.D. Mich. 1992) ("The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim"). Indeed, instead of raising the issues below, the Counties instead secured multiple stays of the case, *see* Response to Defendants' Motion for Reconsideration, RE 256, Page ID ## 6567–6570, 6573, all the while focusing on their efforts in this Court. Their failure to raise these issues in the District Court, where they belong, continue. For example, as discussed below, about two

months ago, the District Court authorized partial class notice. Order Approving Class Notice, RE 260. The Counties failed to move for decertification. By raising practical certification-and-case-management issues here, the Counties are effectively asking this Court to exercise superintending control over the District Court. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 960 (9th Cir. 2005) ("When considering whether to allow interlocutory appeals, we will avoid 'both micromanagement of complex class actions as they evolve in the district court and inhibition of the district court's willingness to revise the class certification for fear of triggering another round of appellate review.'") (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002)).

### 2.    The District Court conducted a rigorous analysis

Despite the District Court's thorough analysis, the Counties claim that "the district court" did not "'probe behind the pleadings.'" Appellants' Brief, Dkt. 45, Page ID # 44 (citing *Falcon*, 457 U.S. at 160). This unelaborated complaint entirely fails to address the District Court's careful and thorough analysis.[18] They also complain about the fact that some of them had not yet answered the complaint, arguing that "[i]t is difficult to imagine how a record that consists only of the

---

[18] The Court's analysis went well beyond certifying "by virtue of [the case's] designation as [a class action] in the pleadings." *Cash v. Swifton Land Corp.*, 434 F.2d 569 (6th Cir. 1970) (finding certification of a single-family class improper).

Plaintiff's complaint and certification motion and *some* of the Defendants'
responsive pleadings and responses to the certification motion creates an 'adequate'
record that suffices for purposes of the 'rigorous analysis' required by Rule 23."
Appellants' Brief, Dkt. 45, Page ID ## 44-45. But every one of the Counties had
moved to dismiss the complaint prior to the Court's certification decision, RE 22;
23; 66; 120; 122-1; 123, and all but Alcona and Washtenaw had opposed class
certification. RE 97; 105; 112; 113. Even had they not, the Counties' argument
ignores the extensive record before the District Court, as well as the District Court's
broad discretion in considering that record. And the Counties offer no authority for
the implicit proposition that pleadings must be closed before the trial court can
consider class certification. A litigant cannot simply announce a position and leave
its analysis to the Court. *See Bible Believers v. Wayne Cty.*, 2013 WL 2048923, at
*13 (E.D. Mich. May 14, 2013), *aff'd*, 765 F.3d 578 (6th Cir. 2014), *reh'g en banc
granted, opinion vacated* (Oct. 23, 2014), *on reh'g en banc sub nom. Bible Believers
v. Wayne Cty., Mich.*, 805 F.3d 228 (6th Cir. 2015), and *rev'd and remanded sub
nom. on other grounds Bible Believers v. Wayne Cty.*, Mich., 805 F.3d 228 (6th Cir.
2015) ("Plaintiffs may not merely announce a position and leave it to the Court to
determine and rationalize the basis of this claim."). Indeed, the serial stays that the
Counties have secured, *see* Response to Defendants' Motion for Reconsideration,
RE 256, Page ID ## 6567–6570, 6573, fatally undermine their argument that the

case has moved too quickly. At the time of certification, the Counties' motions to dismiss were pending, and, after the District Court denied them, it stayed the case for the Counties to pursue their ill-fated sovereign immunity appeal.[19]

### 3.    The District Court did not abuse its discretion with respect to discovery

The Counties were not entitled to discovery prior to the District Court's certification decision. *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209–10 (9th Cir. 1975) ("Whether or not discovery will be permitted" with respect to class certification issues "lies within the sound discretion of the trial court," and "[w]here the necessary factual issues may be resolved without discovery, it is not required."). Indeed, prior to certification, none of them sought certification-related discovery, except to the extent that they—of course—cited the lack of such discovery in opposing certification. Since then, despite their ability to seek decertification,

---

[19] The Counties also speculate as to Mr. Fox's motives. They claim that he "and his counsel wanted the district court to preclude any person who had actually had property foreclosed and sold by the non-Gratiot County Defendants from being able to sue those counties just because Fox and his counsel wanted to control a multi-county class action." Appellants' Brief, Dkt. 45, Page ID # 21. The Counties' speculation as to the "want[s]" of Mr. Fox and his lawyers is both unwarranted and incorrect. Individual Class Members can bring their own actions or otherwise opt out of the Class. But without a Class Action they are at risk from unscrupulous solicitors. For example, non-attorney "claims companies" have systematically deluged Class Members with solicitations that this Court has confirmed are "misleading." Opinion Regarding ARI's Communications, RE 285, Page ID ## 7309–7310, 7312.

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016), none of them have sought any certification-related discovery at any point or to otherwise revisit the issue in the District Court.

In short, this is not a case in which a defendant sought precertification discovery, was denied, and can point to that denial as a critical factor in a misguided certification. Rather, none of the Counties meaningfully sought certification-related discovery, and now try to use their failure as an excuse for seeking the certification's overturning.

Moreover, with the exception of their speculation about Mr. Fox, discussed *infra*, the Counties offer no suggestion of how discovery might have affected the Court's exercise of its broad certification-related discretion. And, again, with good reason: the *prima facie* case for certification is overwhelming. Where, as here, the class to be certified is challenging a common government policy, discovery is generally unhelpful. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTION (FIFTH) § 7:16 (2013) (citing MANUAL FOR COMPLEX MITIGATION (FOURTH) § 21.14 (2004)). And even if, *arguendo*, Mr. Fox turns out to be inadequate and needs to be replaced, district courts can and do routinely replace class representatives who suffer from unique infirmities, as discussed *supra*.

Nonetheless, the Counties claim that the District Court abused its extraordinary discretion by deciding class certification without ordering

precertification discovery. In doing so, they criticize the District Court's treatment of *American Medical Systems*. They claim that "the critical factor in *American Medical Systems* was not the timing of the order" but rather "the fact that the defendant was not given a meaningful opportunity to present evidence on the maintainability of the class action." Appellants' Brief, Dkt. 45, Page ID # 45 (citing *Am. Med. Sys.*, 75 F.3d at 1086 and describing it as "collecting cases."). But *Am. Med. Sys.* did emphasize the timing issue, that the class was certified "three days after [defendant] was served." *Am. Med. Sys.*, 75 F.3d at 1086. Meanwhile, here, the Counties has been actually served for at least nine months before certification. Order Certifying Class, RE 124, Page ID # 2295. And as discussed above, class action defendants are not entitled to pre-certification discovery. *Kamm*, *supra*. Thus, the Counties are incorrect that the requisite analytical "rigor is nigh impossible without the benefit of discovery and allowing all parties to challenge the proofs." Appellants' Brief, RE 45, Page ID # 16.[20]

---

[20] The Counties claim that "[t]his prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." Appellants' Brief, RE 45, Page ID # 46 (citing *Am. Med. Sys.*, 75 F.3d at 1083). But "[t]he defendant in *American Medical Systems* was challenging an amended order of certification entered only three days after it was served," whereas this case has been long outstanding and this motion thoroughly briefed; and "the record here, which includes documentary evidence, is adequate for purposes of Rule 23." Order Certifying Class, RE 124, Page ID ## 2294-2295 (citing *Am. Med. Sys., Inc.*, 75 F.3d at 1077, 1083). And the *class members*' due process interest in avoiding being bound

### 4.    The District Court did not abuse its discretion in defining the class

The Counties also contest the class definition because, they say, it contains class members whose only damages would reflect the fair market value of the property taken, which the Counties say is unrecoverable. This argument fails for two key reasons.

First, the class definition is subject to amendment. *Ms. L. v. U.S. Immigration and Customs Enforcement ("ICE")*, 330 F.R.D. 284, 292 (S.D. Cal. 2019) ("[M]odification of the class definition falls squarely within the confines of Supreme Court precedent and Rule 23(c)(1)(C), which give courts broad discretion to alter or amend a class definition considering subsequent developments in a case."); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 302 F.R.D. at 462–63; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 69 Fed. R. Serv. 3d 791 (M.D. Pa. 2007) ("[T]he Court notes it is not bound by Plaintiffs' proposed class definition and has broad discretion to redefine the class, whether upon motion or sua sponte."). The Counties have not sought such amendment. Routine issues of class administration are not a basis for decertification, *Minter v. Wells Fargo Bank, N.A.*, 2013 WL 1795564, at *5 (D. Md. Apr. 26, 2013) (case management "[c]omplexity,

---

by an unsatisfactory class action outcome is not served by deference to the *defendants*' ability to contest certification.

by itself, is not a basis for decertification"), let alone a basis to overturn certification on a Rule 23(f) petition.

*Second*, the Class Members *are* entitled to damages based on their properties' fair market values. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019) (taking "compensation must generally consist of the total value of the property when taken, plus interest from that time[,]" citing *Jacobs v. United States*, 290 U.S. 13 (1933)). The total value of the property taken required for sufficient "just compensation" means the "full monetary equivalent" of the property taken. *Almota Farmers Elev. & Whse Co. v. U.S.*, 409 U.S. 470, 473 (1973).[21] *See also* Celene Chen, *Homeowners' Rights: How Courts Can Prevent States From Stealing Home Equity During Property Tax Foreclosure*, 41 Rev. Banking & Fin. L. 385,

---

[21] The owner of taken property must be put "in as good position pecuniarily as he would have been if his property had not been taken." *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 586 (1923); *Almota*, 409 U.S. at 473; *United States v. Reynolds*, 397 U.S. 14, 16 (1970); *United States v. Virginia Electric Co.*, 365 U.S. 624, 633 (1960). Stated another way, taking governments must pay "the full and perfect equivalent in money of the property taken." *United States v. Miller*, 317 U.S. 369, 373 (1943). The amount the taking government dictates is not the *de facto* amount of just compensation. *United States v John J. Felin & Co.*, 334 U.S. 624 (1948). "The question is what has the owner lost, not what has the taker gained." *Roberts v. New York City*, 295 U.S. 264, 282 (1935).

418–23 (2021) (fair market value is appropriate measure in tax equity takings cases).[22]

*Third*, the issue of damages remains outstanding. As the District Court correctly found, the class includes property owners who suffered damages under either calculation, and the Court "has yet to decide the proper measure of damages." Order, RE 124, Page ID # 2297. Indeed, while the issue is premature, for federal takings claims, lost value is clearly the basis for the correct measure. *See Knick*, 139 S. Ct. at 2170.

The Counties analysis of the class definition ultimately veers into unwarranted and unsupported speculation. They claim that "Fox—who holds a surplus-proceeds

---

[22] The Counties' cases to the contrary are either distinguishable or unpersuasive. In *Rafaeli*, the issue of fair market value damages was not before the court, so it apparent rejection of fair market value-based damages is *dicta*. *Rafaeli*, 505 Mich. at 521 (Viviano, J., concurring) ("I would not now rule out the possibility that 'just compensation' might require something greater than the surplus in a particular case, especially in cases in which the government purchased the property for the minimum bid. But we have no reason to decide that issue in this case because, although plaintiffs nominally distinguish equity and surplus, they have offered no argument suggesting that the tax foreclosures here failed to obtain a fair price for their properties."). And *Rafaeli* never considered the issue of Fifth Amendment damages, as opposed to damages for a state-law-takings claim. Likewise, *Proctor*, 2022 WL 67248, at *9-10 was a state court case considering state law. *Freed v. Thomas*, 2021 WL 942077, at *3–4 (E.D. Mich. Feb. 26, 2021) is under appeal, and, as discussed in the Class's brief in the counterpart 22-1265 case, it confirmed that the Counties' preferred state-law alternative to this case provides an insufficient remedy. And *Bowles v. Sabree*, 2022 WL 141666, at *10 (E.D. Mich. Jan. 14, 2022) followed *Freed*.

claim—is incentivized to use the fair-market-value claims as leverage for a settlement based on surplus proceeds and so abandon the interests of the much more numerous class members who do not have surplus-proceeds claims." Appellants' Brief, Dkt. 45, Page ID ## 48-49. The Counties lack any evidentiary support for their claim that the Class Members without "surplus-proceeds claims" are "much more numerous" than those that have them. Indeed, because they are resisting the production of discovery below, the Class has no way of evaluating this claim. Motion to Compel, RE 269, Page ID ## 6871–6872. But in any event, once again, if this is indeed the case, it is an issue for the Counties to raise with the District Court. *Ms. L. v. U.S. Immigration and Customs Enforcement ("ICE")*, 330 F.R.D. 284, 292 (S.D. Cal. 2019); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 302 F.R.D. at 462–63; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 69 Fed. R. Serv. 3d 791 (all recognizing ongoing District Court authority over case management issues such as class definition).

### 5. The District Court did not abuse its discretion in determining that Fox is an adequate class representative

The Counties argue that the District Court's analysis of Mr. Fox's adequacy was insufficient. They argue that *Senter v. GMC* imposes strict requirements on the District Court's determination of a class representative's adequacy. It does not. *Senter* did find that "[t]here are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common

interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976). Still, the District Court's adequacy determination is subject to the same broad deference as the rest of the District Court's class certification conclusions. *Turnage*, 307 Fed. Appx. at 921. And the District Court's determination was correct. As the District Court found, that "there . . . [was] no evidence of a conflict of interest[,]" and "[t]o the contrary . . . the incentives of the class members, Plaintiff and his counsel are aligned, and all share the same goal: maximizing recovery." Order Certifying Class, RE 124, Page ID # 2302.[23]

---

[23] The Counties' claim that "the court concluded that Fox is an adequate representative for the class despite the absence of any evidence that he is sufficiently knowledgeable to assist Class Counsel or that he does not have conflicts with other class members," Appellants' Brief, Dkt. 45, Page ID # 29, is a red herring. They cite no requirement that the District Court make representative-specific evidentiary findings, and Plaintiff need not prove a negative with respect to intimated conflicts. Indeed, the proposed class representative's litigation conduct and strategy itself constitute "evidence" with respect to adequacy. *See, e.g.*, *Christy v. Heritage Bank*, 2013 WL 6858008, at *5 (M.D. Tenn. Nov. 8, 2013) ("Evidence that [the proposed representative]'s theories of liability and damages are deftly crafted to help ensure the class's recovery is a clue that [the representative] will vigorously prosecute the class's interests"). The Counties' claim that "[t]o demonstrate adequacy of representation, the party seeking class certification must identify some evidence— even 'basic affidavits regarding the representatives' knowledge of the case,'" Appellants' Brief, Dkt. 45, Page ID # 47 (quoting *Bond v. Antero Res. Group*, 438 F.R.D. 187, 196 (S.D. Ohio 2018)), is similarly incorrect. This unpublished district court opinion hypothesized that it would be satisfied by such an affidavit, along with

-50-

The Counties further claim that "it is Fox's obligation to show that there are no conflicts of interest between him and the proposed class," and that the court improperly "shifted the burden of proving the adequacy of representation to the defendants." Appellants' Brief, Dkt. 45, Page ID ## 47-48. But Plaintiff met his burden. As Plaintiff explained in his Motion to Certify Class, there are no potential intra-class conflicts and no hint of antagonism between the claims of Plaintiff and the Class. Motion to Certify Class, RE 93, Page ID # 1298. Plaintiff is a member of the Class and asserts the same type of claim for damages. *Id.*, citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006). And Plaintiff and all members of the Class seek to hold Defendants responsible for the unconstitutional conduct described herein. *Id.*, Page ID # 1299. At the very least, concluding such was within the district court's broad discretion. *Turnage*, 307 Fed. Appx. at 921.[24]

_____

a declaration showing counsel's adequacy, but that the other factors were not established. Here, the other factors *were* established, and Plaintiff did submit counsel declarations, along with voluminous materials. Motion to Certify Class, RE 93.

[24] *Kirkpatrick v. J.C. Braford & Co.*, 827 F.2d 718 (11th Cir. 1987), merely noted that where, unlike here, district courts have found that the proposed representative would not adequately act in the class's interest, they had exercised their authority to deny appointment, but cautioned that "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick*, 827 F.2d at 727. Similarly, *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) merely stated that "class certification

As to representative-related discovery, as discussed above, defendants are not entitled to discovery, *Kamm*, 509 F.2d at 209–10, and the Counties are unclear as to what they think certification-related discovery might reveal. The closest they come is their claim that "[c]lasses are rarely certified before the defendants have deposed the named plaintiff because that testimony is needed to examine the plaintiff's adequacy as a class representative." Appellants' Brief, Dkt. 45, Page ID # 44. But their only authority for this factual proposition about district court practices is the Fourth Circuit's anodyne 1978 pronouncement that "discovery is to be encouraged." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1313 (4th Cir. 1978).

Moreover, as the District Court noted, the adequacy "requirement 'tends to merge with the commonality and typicality criteria of Rule 23(a).'" Order Certifying Class, RE 124, Page ID ## 2301-2302 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)). "The Sixth Circuit therefore holds that "to satisfy the adequate representation requirements under Rule 23 . . . there must be an absence

---

*may* properly be denied" if the class representatives seem unable to "protect the interests of the class against the possibly competing interests of the attorneys," and there is no suggestion of any such "possible competing interests" here, or that Mr. Fox is otherwise inadequate. *Maywalt*, 67 F.3d at 1077–78 (quoting *Kirkpatrick*, 827 F.2d at 727) (emphasis added). Put simply, these cases explain that district courts *may* exercise their discretion to find proposed representatives inadequate, not that courts *must* consider specific evidence or make particular findings in order to find a representative adequate. And *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) turned on numerosity and commonality, not adequacy.

of a conflict of interest, and the presence of common interests and injury." *Id.* at Page ID # 2302 (quoting *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998)). In this respect, the District Court correctly found that "the incentives of the class members, Plaintiff and his counsel are aligned, and all share the same goal: maximizing recovery." *Id.* "Moreover," it found, "Plaintiff's counsel appears qualified to act as class counsel." *Id.* It also noted that there was no suggestion of any conflict.

Despite these clear affirmative findings, the Counties complain that the District Court did not, in effect, disprove a negative and conclusively disabuse any suggestion of inadequacy. This has it backwards: Plaintiff established adequacy, which the Supreme Court has found tends to "merge with . . . commonality and typicality," *Amchem Prods.,* 521 U.S. at 626 n.20, by satisfying those two criteria; demonstrating a clear incentive to maximize recovery; and engaging qualified and experienced class counsel. The District Court need not also disprove any possible suspicion that the Counties might harbor. Under these circumstances, for the District Court to find for Plaintiff on the issue was not an "abuse of discretion." It was common sense.

Finally, even if, *arguendo*, the Counties' arguments had any substantive merit, they are the province of the District Court's continued oversight of the case. As discussed above, courts routinely permit the appointment of new class

representatives in the event that a representative turns out to be inadequate or otherwise unable to serve. Given this widespread practice, and the broad jurisprudence supporting it, it would make no sense to overturn certification under Rule 23(f) based on the District Court's supposedly inadequate adequacy analysis.[25]

### 6. The District Court did not abuse its discretion in determining that this class action is superior to state court actions

The Counties further claim that the District Court abused its discretion by failing to find that state court actions were superior to this class action. Strikingly, they claim *both* that the District Court erred in failing to find county-by-county state court actions superior, Appellants' Brief, Dkt. 45, Page ID ## 50-55, *and* in failing to find that a new state-court claims process enacted after certification that purports to bar state-court class actions was superior. *Id*. at Page ID # 49 (discussing Mich. Comp. Laws § 211.78t, as amended by Public Act 256 of 2020 ("PA 256")). *See also* MCL § 211.78l ("exclusive remedy" provision purports to bar claims outside of specialized individual process).

Obviously, these two propositions are irreconcilable. If state-court class actions are the superior method for resolving these claims, then a statute that bans them is inferior, and *vice-versa*. The Counties' argument is plainly opportunistic.

---

[25] At most, the Counties' argument amounts to a request that this Court remand for a supplemental record as to Mr. Fox's adequacy.

Each of the inconsistent arguments also fails on its own terms.

### a.    PA 256 is inferior to this Class Action.

### i.    PA 256 is inferior

As Plaintiff explains in the brief in the counterpart case no. 22-1265, the District Court correctly concluded that the legislation that would become Public Act 256 of 2020 ("PA 256") offered a "plainly inferior" alternative to this case, Order Certifying Class, RE 124, Page ID # 2304, and PA 256 as enacted is rife with unconstitutional provisions.[26]

### ii.    The District Court did not err in failing to find that PA 256 was superior to this case

---

[26] Given PA 256's interlocking deadlines, the District Court ordered class notice be sent to those class members who, under the Counties' theory, might be subject to a May 15, 2022 deadline to take action under the PA 256 claims process. Order Approving Class Notice, RE 260. The notice provided that class members "have legal rights and options" that "may [be] exercise[d] before the deadlines set forth in t[he] notice," Proposed Class Notice, RE 260-1, Page ID # 6832, and provided class members with an entire section dedicated to the discussion of PA 256, including a comparison between the statute and this case, as well as the class members' rights and any upcoming deadlines. *Id.* at Page ID ## 6825–6826. Yet the Counties mischaracterize the notice as Mr. Fox "notif[ying]" all class members who can pursue this remedy for sales in 2021 that they ought not do so—even though he himself cannot avail himself of the speedier resolution that the state statute provides." Appellants' Brief, Dkt. 45, Page ID # 49. They even mischaracterize the order approving the notice as "ex parte," even though they had over 48 hours to object to the proposed notice between its submission and approval. *Id.* (citing RE 260, Page ID # 6816 as an "Ex parte Notice Order"). And the Court approved the notice after all parties had an opportunity for input. Order Approving Class Notice, RE 260, Page ID ## 6817-6818.

The Counties note that "[a]t the time that the district court ruled on class certification, the court was aware of the legislation to amend the [General Property Tax Act, or "GPTA"] and provide an exclusive remedy to some or all of the class members here," Appellants' Brief, Dkt. 45, Page ID ## 53-54, without fully acknowledging the Court's correct conclusion that the then-proposal was "plainly inferior to a class action." Order Certifying Class, RE 124, Page ID # 2304.

The Counties nonetheless claim that "[t]he district court failed to undertake a rigorous analysis of the superiority of the Michigan Legislature's now-adopted framework for resolving surplus-proceeds claims for some and, if the Michigan Supreme Court determines that *Rafaeli* is fully retroactive, then all of the class members." Appellants' Brief, Dkt. 45, Page ID # 54. But the Court's analysis of the legislation-as-pending was sufficient and correct. Order Certifying Class, RE 124, Page ID # 2304. And the Counties can hardly complain about the District Court's failure to "rigorously analyze" the "*now-adopted* framework," Appellants' Brief, RE 45, Page ID # 54, as they never asked the Court to decertify in light of the statutory framework's adoption.

The Counties instead claim now that "[t]he district court concluded that because it disliked the draft legislation, it—and not the legislature—should provide the mechanism for resolving these claims." Appellants' Brief, Dkt. 45, Page ID # 54. But this grossly misrepresents the District Court's conclusion by suggesting that

it was a mere policy disagreement. To the contrary, the Michigan Supreme Court had already ruled that the Counties had committed takings against the Class Members. *Rafaeli*, 505 Mich. at 474–81. The District Court was tasked with protecting the Class's interests. *In re Payment Card Interchange Fee*, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) ("In a class action litigation, the Court bears the responsibility to protect the class and preserve the integrity of the process" (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)). Whether or not the District Court "liked" the legislation, it was easy to see that the legislation did not afford the Class Members sufficient—if any—relief, as discussed in the counterpart brief.

The Counties then offer several generalized peans to taxing powers. None of them are persuasive. For example, they note that "each sovereign's right to assess taxes in our federal system is crucial to their independence. *McCulloch v. Maryland*, 17 U.S. 316, 376 (1819)." Appellants' Brief, Dkt. 45, Page ID # 54. But this Court has already noted that the conduct at issue here falls outside the taxation process. *Freed*, 976 F.3d at 734.

The Counties also note that "[t]he legislature is responsible for balancing the interests of the residents of Michigan, their government institutions, and delinquent taxpayers," and concede that it must do so "within the confines of the state and

federal constitutions." Appellants' Brief, Dkt. 45, Page ID # 54. As discussed in the counterpart brief, PA 256 falls well outside those confines.

The Counties finally claim that "[a]lthough the courts have the authority to adjudicate actual controversies arising under the law between property owners and the government, that authority is not exclusive." *Id*. But they offer no authority or further analysis for the suggestion that the Legislature should be adjudicating disputes. In any event, Litigants "may not merely announce a position and leave it to the Court to determine and rationalize the basis of this claim." *Bible Believers*, 2013 WL 2048923, at *13.

> **b.      The District Court did not abuse its discretion in finding that this Class Action was superior to the state court class actions that the Counties' preferred PA 256 purports to bar.**

The Counties complain that "[t]he district court offered no analysis as to why such an action should be lodged in the federal courts rather than pursued, for example, in the state circuit courts." Appellants' Brief, Dkt. 45, Page ID # 51. *See also id.* at Page ID # 29 ("the district court failed to consider whether these claims are better handled by the state courts where the underlying claims raise developing issues of state law that Class Counsel, by their conduct, implicitly concede can only be definitely resolved in state court."). This argument fails for several reasons.

*First*, the District Court did consider the issue. *See, e.g.*, Order Certifying Class, RE 124, Page ID # 2304 (discussing the shortcomings of PA 256's legislative ancestors).

*Second*, Class Counsel's state court actions hardly undermine the District Court's analysis. Some counties have "opted out" of administering the tax foreclosure process and allowed the State of Michigan to administer it. Opinion on Sovereign Immunity, RE 227, Page ID ## 6132–6134. Class Counsel does represent a certified class of former property owners in those counties against the State in state court. *See, e.g.*, *Hathon* Recertification Order, RE 176-5. But that is because Eleventh Amendment immunity bars litigation against the State in the federal courts, not because the "developing issues of state law . . . can only be definitively resolved in state court." Appellants' Brief, Dkt. 45, Page ID # 29.[27] And as for the other state court cases that certain class counsel have pursued, those have served as a necessary

---

[27] The Counties claim that "Class Counsel's own conduct in pursuing these cases in alternative venues and not once seeking to stay any of those cases because of this class action demonstrates that this class action is not the superior method for addressing the various claims at issue." Appellants' Brief, RE 45, Page ID # 53. But obviously the pendency of this action would be no reason to stay consideration of the claims against the State with respect to the counties where it administered the program; Order Granting Stay, *Barnard v. State*, Case No. 20-000254-MM (Mich. Ct. Cl. Feb. 1, 2021); *Zettel*, Case No. 18-0591-26-CZ (Mar. 23, 2021). Again, the Counties have not raised this issue below. Were they to do so, it would allow for the development of a record showing such stays.

protective measure against the Counties' serial insistence that the federal courts lack jurisdiction over these cases. Defs.' Motion Seeking Dismissal, RE 23, Page ID # 438–440; Opinion on Sovereign Immunity, RE 227, Page ID ## 6138–6142.[28]

*Third*, the Counties cite no authority for the proposition that a district court must "offer analysis" rejecting every possible alternative to a federal class action. Indeed, given plaintiffs' mastery of their complaint, there is frequently a potential state-court class action alternative to a federal case. So long as federal jurisdiction is met, the plaintiff is entitled to pursue a federal claim. *Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 390 (S.D.N.Y. 1998). ("When a plaintiff files in federal court . . . The only question a defendant can raise is whether plaintiff has a federal claim.").

---

[28] Contrary to the Counties' mischaracterization, the *Proctor* plaintiff did not contend "that the Michigan Supreme Court did not really mean it when the *Rafaeli* decision held that plaintiffs could not maintain a takings claim for fair market value." Appellants' Brief, Dkt. 45, Page ID # 52. Rather, Mr. Proctor noted, correctly, that *Rafaeli* limited its analysis to state law takings claim; the supremacy clause requires state courts to award full federal-law damages for federal takings claims; and federal-law takings damages are based on fair market value. *Proctor*, 2022 WL 67248, at *9–13. Similarly, the Counties claim that "this class action is so inferior that Class Counsel is pursuing resolution of federal questions in a competing case," citing *Freed v. Thomas*, No. 17-CV-13519, at *8, *appeal docketed*, No. 21-1339 (6th Cir. Apr. 7, 2021). Appellants' Brief, Dkt. 45, Page ID # 53. But the fact that some class counsel has pursued this case, which the Counties failed to raise below, hardly undermines the Court's exercise of discretion to certify the class.

*Fourth*, as discussed above, the Counties have themselves argued that state courts can only employ the insufficient-if-not-illusory PA 256 process. Appellants' Brief, Dkt. 45, Page ID ## 16-18. They cannot then claim that plaintiff should pursue state court class actions.

*Fifth*, the Supreme Court has just recently affirmed that takings victims may proceed directly to federal court without ever bringing a state-court case. *Knick*, 139 S. Ct. at 2170. The Counties' "state court alternative" argument completely ignores this authority.

*Sixth*, even if a state court were to correctly eschew the unconstitutional "requirement" for a tax equity takings victim to use PA 256, the state-law remedies for these takings are insufficient for all of the reasons set forth above.[29]

---

[29] The Counties argue that "[a]mong the issues that remain in this case are (1) whether class counsel's fair-market-value takings theory is viable; (2) whether the *Rafaeli* decision is retroactive; and (3) whether the Legislature's amendments to the GPTA provide the exclusive remedy for some or all of the class members here. Class Counsel is litigating all of these issues *in state court*." Appellants' Brief, Dkt. 45, Page ID # 51 (emphasis in original). Again, though: the State itself administered the foreclosure process in some counties; the claims against the State must be brought in state court, and the fact that the State has raised these defenses does not make them "issues" that preclude federal class litigation of the claims against the counties. And, again, the state court claims against counties are precautionary hedges against the Counties' serial challenges to this case, not "competing" cases. The Counties' claim that "Class Counsel are pursuing these issues in competing state-court class actions because the issues arise under Michigan law and can only be definitively by state courts," Appellants' Brief, Dkt. 45, Page ID # 52, is thus incorrect.

*Seventh*, The District Court's willingness to defer certain issues to state court resolution hardly means that state-court litigation would be superior to this case. Appellants' Brief, Dkt. 45, Page ID # 52. Rather, it demonstrates that, if the District Court in its judgment believes it should defer to a state court on a legal issue, it can do so without abandoning the advantages of classwide litigation.

"The history of this action" thus does not "demonstrate[] that one of the principal benefits of a class action—providing a single forum to efficiently and economically resolve a large number of similar claims . . . has been lost because of the need to address issues in state courts." Appellants' Brief, Dkt. 45, Page ID # 53. Rather, it shows that: plaintiffs must pursue their claims against the State in state court; and the District Court can prudently defer to state courts on legal issues while maintaining the advantages that even the Counties acknowledge. Indeed, one of the very state court cases that the Counties cite affirmed the wisdom of the District Court's approach here. "The juridical link doctrine makes sense in the context of class action litigation in the Federal District Court where, without the rule, one district court would be the forum for numerous class action lawsuits dealing with substantially the same legal issues but different governmental defendants." *Zettel v. County of Leelanau et al.*, Hr'g. Tr., RE 128-3, Page ID ## 2514–2515.

      **c.**    **The District Court did not abuse its discretion in rejecting the Counties' flawed predominance arguments.**

The Counties claim that "the district court failed to [] adequately address whether common issues of law predominate where numerous class members' claims are affected by liens held by non-parties." Appellants' Brief, RE 45, Page ID # 29. Again, though, the District Court's analysis was fulsome—and correct. It recognized that, while outstanding liens might affect a given Class Member's damages, that is not an obstacle to class certification. Order Certifying Class, RE 124, Page ID # 2299. Multiple courts considering class certification in analogous cases have agreed. *See Hathon* Class Certification Order, RE 118-3, Page ID # 2071 (citing MCL 211.78k(5)(c));[30] *Zettel v. Charlevoix Co.* Aug. 31, 2020 Hearing Transcript, RE 128-3, Page ID ## 2517, 2519 (*Zettel* court, after inviting special briefing on the issue of lienholders, certifies the class, "adopting [*Hathon*]'s analysis"). *See also Rafaeli*, 505 Mich. at 445 (after title vests in foreclosing county's name, "the foreclosing governmental unit's title to the property is not subject to any recorded or unrecorded lien," citing MCL 211.78k(6), although of course it also found that underlying owners such as the class members here retained a property interest in their equity despite this statutory process). Thus, "the interests of the former

_____

[30] The Court of Claims later decertified *Hathon* for a different reason, but granted plaintiff there leave to seek recertification; the recertification motion was granted. *Hathon* Recertification Order, RE 176-5.

lienholders are just that: former or expired." *Hathon* Class Certification Order, RE 118-3, Page ID ## 2071–2072.

The *Hathon* Court also recognized that the fact that third-party creditors might have claims against some class members' recoveries is hardly an obstacle to certification. The "[rights of] former lienholders . . . 'do not raise inquiries for this case that predominate over the interests of the class members,'" and "Defendants' apparent concern for the rights of former lienholders whose rights were extinguished by operation of law are unconvincing." *Id.* Page ID # 2072. "In essence, defendants are arguing that if there are any creditors of the plaintiffs, the very existence of those creditors will defeat the class action." *Id.* at Page ID # 2073. But "the Court decline[d] to give credence to hypothetical actions of potential creditors that might be taken post-judgment." *Id.* at Page ID ## 2073–2074. "[W]hether former lienholders [] seek to subsequently recover against plaintiffs or class members does not alter the common legal questions raised in this case." *Id.* at Page ID # 2072. Any collection effort would be extrinsic to this case and is, therefore, irrelevant.

In the unlikely event that an unexpected substantial number of former lienholders emerge and seek to intervene, the District Court could manage that scenario. Damages would still involve straightforward calculations: if the Court found that the liens should be recognized, then instead of comparing the property

value to the tax delinquency, the Court would be able to craft a claims process to account for liens.

Indeed, lienholders would not need to intervene because mandatory joinder does not apply to class actions. *Thompson v. Board of Education*, 71 F.R.D 398, 412 (W.D. Mich. 1976) (mandatory joinder inapplicable to class actions). Even without this exception, former lienholders are not indispensable. "'[C]omplete relief' is determined as between persons already parties, and not as between 'a party and the absent person whose joinder is sought.'" *May v. CitiMortgage, Inc.*, 2013 WL 6549011, at *2 (E.D. Mich. Dec. 13, 2013) (citations omitted). And "factors such as judicial economy or avoidance of multiple litigation are not enough to compel joinder." *Mather Inv'rs, LLC v. Larson*, 720 N.W.2d 575, 577–78 (Mich. App. 2006) (quotations omitted); *Gentry v. Wayne Cty.*, 2013 WL 12180801, at *8 (E.D. Mich. July 2, 2013). There is no question that the current roster of parties allows the Court to adjudicate the dispute between Plaintiff and the class on the one hand, and the Counties on the other. This is an action for money damages—not an *in rem* proceeding to establish the rights of potential property claimants.[31]

---

[31] Unlike in *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350 (1940), the Class can litigate its taking claims against the Counties without adjudicating any disputes any Class Member might have with any lienholders.

# CONCLUSION

Plaintiff respectfully requests that the Court affirm the District Court's decision to certify the Class.


July 1, 2022

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Christopher D. Kaye (P61918)
**THE MILLER LAW FIRM, P.C.**
950 W University Drive, Ste 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
cdk@millerlawpc.com
**Attorneys for Plaintiff-Appellee and Co-Lead Class Counsel**

Philip L. Ellison (P74117)
**OUTSIDE LEGAL COUNSEL PLC**
PO Box 107, Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com
**Attorney for Plaintiff-Appellee and Co-Lead Class Counsel**

Matthew E. Gronda (P73693)
PO Box 70, St. Charles, MI 48655
(989) 249-0350
matthewgronda@gmail.com
**Attorney for Plaintiff-Appellee and Class Counsel**

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d)(2), this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Times New Roman 14-point proportional type. The principal brief, including headers and footnotes, contains 12,881 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words. The word processing software used to prepare this brief was Microsoft Word Office 360.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

July 1, 2022                            */s/ E. Powell Miller*
                                        E. Powell Miller (P39487)
                                        **THE MILLER LAW FIRM, P.C.**
                                        950 W University Drive, Ste 300
                                        Rochester, MI 48307
                                        (248) 841-2200
                                        epm@millerlawpc.com
                                        **Attorney for Plaintiff-Appellee and Co-Lead Class Counsel**

# CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

July 1, 2022

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W University Drive, Ste 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
**Attorney for Plaintiff-Appellee and Co-Lead Class Counsel**

### Designation of Record

| Doc. Entry No. | Date Entered | Page ID Range | Description of Document |
|---|---|---|---|
| 17 | 09/04/2019 | 87 | First Amended Complaint |
| 17 | 09/04/2019 | 89 | First Amended Complaint |
| 17 | 09/04/2019 | 222 | First Amended Complaint |
| 17 | 09/04/2019 | 223 | First Amended Complaint |
| 17 | 09/04/2019 | 224 | First Amended Complaint |
| 17 | 09/04/2019 | 225 | First Amended Complaint |
| 17 | 09/04/2019 | 231 | First Amended Complaint |
| 17 | 09/04/2019 | 231-233 | First Amended Complaint |
| 17 | 09/04/2019 | 232-238 | First Amended Complaint |
| 22 | 09/25/2019 | 367-412 | Def. Ogemaw County's Motion for Summary Judgment |
| 23 | 09/26/2019 | 422-466 | Defs' Motion to Dismiss |
| 66 | 11/19/2019 | 852-882 | Def. Macomb County's Motion to Dismiss |
| 85 | 01/10/2020 | 1146-1154 | Order Granting Motion for Second Summons |
| 92 | 09/14/2020 | 1170-1275 | Motion to Lift Stay |
| 92 | 09/14/2020 | 1182 | Motion to Lift Stay |

| 93 | 09/14/2020 | 1277-1311 | Motion for Class Certification |
|---|---|---|---|
| 93 | 09/14/2020 | 1295 | Motion for Class Certification |
| 93 | 09/14/2020 | 1298 | Motion for Class Certification |
| 93 | 09/14/2020 | 1299 | Motion for Class Certification |
| 93-3 | 09/14/2020 | 1401-1429 | Spreadsheet of Tax Foreclosed Properties |
| 94 | 09/14/2020 | 1476-1487 | Motion for Expedited Consideration |
| 97 | 09/18/2020 | 1520-1540 | Def. Ogemaw County's Opposition to Class Certification |
| 105 | 09/25/2020 | 1673 | Def. Macomb County's Opposition to Class Certification |
| 112 | 09/28/2020 | 1846-1874 | Defs.' Opposition to Class Certification |
| 113 | 10/02/2020 | 1875-1891 | Defs. Crawford County and Presque Isle County's Opposition to Class Certification |
| 118-3 | 10/05/2020 | 2071 | *Hathon* Class Certification Order |
| 118-3 | 10/05/2020 | 2071-2072 | *Hathon* Class Certification Order |

| 118-3 | 10/05/2020 | 2072 | *Hathon* Class Certification Order |
| 118-3 | 10/05/2020 | 2073 | *Hathon* Class Certification Order |
| 118-3 | 10/05/2020 | 2073-2074 | *Hathon* Class Certification Order |
| 120 | 10/06/2020 | 2081-2111 | Def. Washtenaw County's Brief in support of Motion to Dismiss |
| 122-1 | 10/14/2020 | 2180-2193 | Defs.' Brief in support of Motion to Dismiss |
| 123 | 10/14/2020 | 2257-2282 | Def. Alcona County's Motion to Dismiss |
| 124 | 10/16/2020 | 2293 | Order Certifying Class |
| 124 | 10/16/2020 | 2294-2295 | Order Certifying Class |
| 124 | 10/16/2020 | 2295 | Order Certifying Class |
| 124 | 10/16/2020 | 2296 | Order Certifying Class |
| 124 | 10/16/2020 | 2297 | Order Certifying Class |
| 124 | 10/16/2020 | 2298 | Order Certifying Class |
| 124 | 10/16/2020 | 2299 | Order Certifying Class |
| 124 | 10/16/2020 | 2300-2301 | Order Certifying Class |
| 124 | 10/16/2020 | 2301-2302 | Order Certifying Class |
| 124 | 10/16/2020 | 2301-2303 | Order Certifying Class |

| 124 | 10/16/2020 | 2302 | Order Certifying Class |
| 124 | 10/16/2020 | 2302-2303 | Order Certifying Class |
| 124 | 10/16/2020 | 2303 | Order Certifying Class |
| 124 | 10/16/2020 | 2304 | Order Certifying Class |
| 124 | 10/16/2020 | 2305 | Order Certifying Class |
| 128-3 | 10/27/2020 | 2514-2515 | *Zettel* Hearing Transcript |
| 128-3 | 10/27/2020 | 2517 | *Zettel* Hearing Transcript |
| 128-3 | 10/27/2020 | 2519 | *Zettel* Hearing Transcript |
| 148 | 01/13/2021 | 3307-3335 | Order Granting in Part Motions to Dismiss |
| 148 | 01/13/2021 | 3334-3335 | Order Granting in Part Motions to Dismiss |
| 153 | 02/01/2021 | 3351-3354 | Notice of Appeal |
| 166 | 03/09/2021 | 3988 | Order Granting Defs.' Joint Motion to Stay |
| 168-2 | 07/09/2021 | 4042 | Michigan Supreme Court Order |
| 171 | 07/15/2021 | 4145-4154 | Order Granting Emergency Motion to Show Cause |
| 176-5 | 07/27/2021 | 4532 | *Hathon* Court of Claims Recertification Order |
| 211 | 10/20/2021 | 5821-5822 | Asset Recovery's Notice of Appeal |

| 227 | 02/22/2022 | 6133 | Opinion on Sovereign Immunity Case No. 21-1108 |
| 227 | 02/22/2022 | 6132-6134 | Opinion on Sovereign Immunity Case No. 21-1108 |
| 227 | 02/22/2022 | 6135-6138 | Opinion on Sovereign Immunity Case No. 21-1108 |
| 227 | 02/22/2022 | 6138-6142 | Opinion on Sovereign Immunity Case No. 21-1108 |
| 227 | 02/22/2022 | 6139-6141 | Opinion on Sovereign Immunity Case No. 21-1108 |
| 237 | 03/29/2022 | 6376-6390 | Order Partially Lifting Stay |
| 256 | 04/19/2022 | 6567-6570 | Response to Defs.' Motion for Reconsideration |
| 256 | 04/19/2022 | 6573 | Response to Defs.' Motion for Reconsideration |
| 256-4 | 04/19/2022 | 6678-6694 | Transcript of Sixth Circuit Oral Argument |
| 258 | 04/22/2022 | 6714-6732 | Order Lifting Stay |
| 260 | 04/27/2022 | 6816 | Order Approving Class Notice |
| 260 | 04/27/2022 | 6816-6820 | Order Approving Class Notice |
| 260 | 04/27/2022 | 6817-6818 | Order Approving Class Notice |

| 260-1 | 04/27/2022 | 6825-6826 | Proposed Class Notice |
| 260-1 | 04/27/2022 | 6832 | Proposed Class Notice |
| 269 | 04/29/2022 | 6871-6872 | Motion to Compel |
| 285 | 06/01/2022 | 7309-7310 | Order and Opinion on Appeal |
| 285 | 06/01/2022 | 7306 | Order and Opinion on Appeal |
| 285 | 06/01/2022 | 7312 | Order and Opinion on Appeal |